## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| Yolande E. Essangui | * | Case No. 16-12984 |
| | * | Chapter 7 |
| Debtor | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| Yolande E. Essangui | * | |
| Plaintiff | * | Adv. No. 16-00201 |
| v. | * | |
| SLF V-2015 Trust, et al. | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT GS2 GRANTOR TRUST 2016-A, ASSIGNEE OF SLV V-2015'S MOTION FOR SUMMARY JUDGMENT, AS TO THE EDUCATIONAL NATURE AND NONDISCHARGEABILITY OF THE LOANS PURSUANT TO 11 U.S.C. 523(a)(8)

Now comes Defendant, GS2 Grantor Trust 2016-A, assignee of SLF V-2015 Trust, (hereinafter referred to as "SLF" or "Defendant"), by and through counsel, and hereby submits its Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7056 on the grounds that there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law. By and through this Motion and Memorandum in Support of this Motion, Defendant requests an entry of an Order from this Court determining that Plaintiff's student loans are educational loans pursuant to 11 U.S.C. 523(a)(8)(A)(ii) and therefore, are excepted from discharge.

1

Dated:  June 29, 2017                    Respectfully submitted,


                                         /s/  Michael J. Klima, Jr.
                                         Michael J. Klima, Jr.
                                         Peroutka, Miller, Klima & Peters, P.A.
                                         8028 Ritchie Highway, Suite 300
                                         Pasadena, MD 21122
                                         Telephone: (410) 553-9491
                                         Email:  jklima@peroutkalaw.com

                                         Counsel for Defendant,
                                         GS2 Grantor Trust 2016-A, assignee of SLF V-
                                         2015 Trust

## MEMORANDUM IN SUPPORT

## STATEMENT OF FACTS

1.      On May 4, 2016, Yolande E. Essangui (hereinafter "Debtor" or "Plaintiff") filed an adversary complaint to determine dischargeability of student loan debt pursuant to 11 U.S.C. § 523(a)(8).

2.      On February 28, 2017, Defendant sent its First Set of Interrogatories, Request for Admissions, and Request for Production of Documents to Plaintiff. Plaintiff responded to Defendant's discovery requests on April 19, 2017. A copy of Plaintiff's Responses to Defendant's Discovery Requests is attached hereto as Exhibit "F".

3.      From March 31, 2008 to July 11, 2008, Debtor enrolled in a Medical Education Readiness Program or ("MERP") and enrolled at Ross University from September 2008 to December 2008. See Plaintiff's Answer to Interrogatory No. 3.

4.      To finance her participation in the MERP program, Debtor applied for and received a private loan from Citibank N.A. ("Loan" or "Note"). See Affidavit of Lisa Cohen at ¶ 4.

5.      On or around March 20, 2008 Defendant Citibank N.A. disbursed approximately $23,670.00 on behalf of the Plaintiff. See Affidavit of Lisa Cohen at ¶ 5.

6.      Plaintiff took medical and science classes within the MERP Program. See Plaintiff's Response to Interrogatory No. 4.

7.      After successful completion of the MERP Program, Plaintiff was able to attend classes at Ross University School of Medicine ("Ross" or "Ross University") and Ross University received funds from the Note on Plaintiff's behalf for attendance. See Plaintiff's Response to Admission No. 1, No. 5, & No. 8.

8.      Plaintiff acknowledges that the funds received from the Note were for an educational benefit. See Plaintiff's Response to Admission No. 6.

9.      Citibank N.A., through a Private Student Loan Asset Purchase Agreement, sold its interest in the loan to SLF V-2015 Trust. See Affidavit of Lisa Cohen at ¶ 6.

10.      Through a Bill of Sale and Assignment Agreement SLV V-2015 assigned its interest in the loan to GS2 Depositor 2016-A SPV, LLC. See Affidavit of Lisa Cohen at ¶ 7.

11.      Through a Trust Agreement GS2 Depositor 2016-A SPV, LLC deposited the loans into the GS2 Grantor Trust 2016-A. See Affidavit of Lisa Cohen at ¶ 8.

12.      GS2 Grantor Trust 2016-A is currently the holder of Plaintiff's student loan. See Affidavit of Lisa Cohen at ¶ 8.

13.      The current balance on the student loan obtained from Citibank that Plaintiff seeks to discharge has a principal balance of $37,175.25 plus interest through January 20, 2017 of $2,083.84 with a per diem of $7.893375. See Affidavit of Lisa Cohen at ¶ 9.

3

## LAW AND ARGUMENT

Plaintiff claims that the Loan in question is dischargeable because it is not a qualified educational loan for purposes of 11 U.S.C. 523(a)(8)(A). Plaintiff argues that pursuant to Section 221(d)(1) of the Internal Revenue Code of 1986 the loan was not used to pay for "qualified higher educational expenses." However, Plaintiff's argument fails because, the Loan is excepted from discharge by § 523(a)(8)(A)(ii) as it consisted of an obligation to repay funds received that in turn provided an educational benefit to the Plaintiff. Therefore, there is no genuine issue of material fact as to Plaintiff's claim and judgment in favor of Defendant should be granted.

**I.       The Standard for Governing a Motion for Summary Judgment.**

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, (1986); *In re Ojiegbe*, 512 B.R. 513, 520 (Bankr. D. Md. 2014); *In re French*, 499 F.3d 345, 352 (4th Cir. 2007).

The initial burden is on the moving party to demonstrate a basis for the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party meets its initial burden, then the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *Id*. If the non-movant fails to satisfy this burden, summary judgment should be entered against the non-moving party. *Id*.

**II.       Plaintiff's Loans Are Nondischargeable Under 11 U.S.C. § 523(a)(8)(A)(ii)**

Prior to 2005, only those student loans backed by the federal government or a non-profit educational institutional were exempt from discharge. During this time 11 USC 523(a)(8) read as follows:

> *for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or an obligation to repay funds received as an educational benefit, scholarship or stipend.*

However, Section 523(a)(8) was amended and read as:

> *(A)(i) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or*

> *(ii) an obligation to repay funds received as an educational benefit, scholarship or stipend*

While the text of the two sections is identical, the text has been split from one paragraph into two sub-paragraphs and now "must be read as encompassing a broader range of educational benefit obligations…" *Sensient Techs. Corp. v. Baiocchi* (*In re Baiocchi*), 389 B.R. 828, 832 (Bankr. E.D. Wis. 2008); *In re Corbin* 506 B.R. 287, 296 (Bankr. W.D. Wa. 2014); *In re Daymon*, 490 B.R. 331, 336 (Bankr. N.D. Ill. 2013).  Therefore, post-BAPCPA student loan obligations owed to private lenders are exempt from discharge absent undue hardship. *In re Corbin*, 506 B.R. 296.

Plaintiff's student loans are non-dischargeable pursuant to 11 U.S.C. §523(a)(8)(A)(ii). This section exempts from discharge, all "obligations" to repay "funds received" as an educational benefit, scholarship or stipend," including obligations owed to for profit lenders. The relevant inquiry into the applicability of § 523(a)(8)(A) is the "stated purpose for the loan when it was obtained, rather than how the proceeds were actually used by the borrower." *In re Rumer*,

469 B.R. 553, 561 (Bankr. M.D. Pa.2012).  An additional purpose does not remove a loan from the educational benefit category so long as there is an educational purpose. *Liberty Bay Credit Union v. Belforte* (*In re Belforte),* 2012 Bankr. LEXIS 4574, 25 (Bankr. D. Mass. Oct. 1, 2012). Further, "[w]hen analyzing subsection (ii), courts pay no attention to who the lender is, but focus instead entirely on whether, in the plain language of the subsection, the obligation is "to repay funds received as an educational benefit" as reflected by the debtor's agreement and intent to use the funds at the time the obligation arose. *See, e.g., Roy v. Sallie Mae* (*In re Roy*), 2010 Bankr. LEXIS 1218 (Bankr. D.N.J. Apr. 8, 2010).

Attending the MERP Program certainly provided Plaintiff with an educational benefit. Plaintiff indicated she received medical and scientific training through classes attended at MERP, which is an educational benefit. Plaintiff has even acknowledged that the funds received from the Note were for an educational benefit. See Plaintiff's Response to Admission No. 6. Therefore, the loan was obtained for an educational benefit that provided Plaintiff with training and education and is excepted from discharge.

A.      **The Plain Language of § 523(a)(8)(A) Pursuant to the Rules of Statutory Construction Makes it Clear That Congress Intended 523(a)(8)(A)(ii) to Provide an Alternative in Determining Dischargeability of Educational Loans**

Section 523(a)(8) provides that a discharge under §§ 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt…

(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for –
    (A)(i) an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit or made under any program funded in whole or in part by a governmental unit or nonprofit institution; **or**
    (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; **or**

(B) any other educational loan that is a qualified educational loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual…

When determining a statute's meaning, courts have found that when "the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254, (1992) (quoting *Rubin v. United States,* 449 U.S. 424, 430, (1981)). Courts have also found that a "text's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute." *Saks v. Franklin Covey Co.,* 316 F.3d 337, 345 (2d Cir.2003). Here, the meaning of the statute is unambiguous as the word "or" is used between subsections to provide the court and parties with alternatives to determine dischargeability of educational loans. Further, only one of the subsections is needed to be satisfied to determine that the loans are excepted from discharge.

Some courts have found that the "language of section 523(a)(8) is unambiguous." *In re Kidd*, 458 B.R. 612, 621 (Bankr. N.D. Ga. 2011). Another court determined that under a "plain language reading of the statute… Plaintiff's loans are nondischargeable." *In re Micko*, 356 B.R. 210, 216-17 (Bankr. D. Ariz. 2006). Therefore, according to the plain ordinary meaning of § 523(a)(8)(A)(ii), Plaintiff was under an obligation to repay funds received and obtained an educational benefit by attending the MERP Program.

Section 523(a)(8)(A)(i) and Section 523(a)(8)(A)(ii) are not in conflict as they provide separate standards to evaluate dischargeability of educational loans. In evaluating a plan confirmation case, the Bankruptcy Court of the District of Maryland noted that "11 U.S.C. § 1129(b)(2)(A) plainly indicates that subsections (i), (ii) and (iii) are to be treated as distinct

alternatives." *In re CRIIMI MAE, Inc.,* 251 B.R. 796, 807 (Bankr. D. Md. 2000). Though this case involves educational loans, similar standards of statutory construction should be applied.

**B.    A Broad Interpretation of "Educational Benefit" or "Funds" Does Not Imply Ambiguity**

"In determining whether language is unambiguous, we "read the statute in its ordinary and natural sense." *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010), *as amended* (May 7, 2010) (quoting *Harvard Secured Creditors Liquidation Trust v. I.R.S.,* 568 F.3d 444, 451 (3d Cir.2009). "A provision is ambiguous only where the disputed language is "reasonably susceptible of different interpretations." *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010), *as amended* (May 7, 2010) (citing *Dobrek v. Phelan,* 419 F.3d 259, 264 (3d Cir.2005).

523(a)(8)(A)(ii) provides that an obligation to repay funds received as an educational benefit, scholarship, or stipend is not dischargeable. In applying for the loan, Plaintiff certainly received "funds", defined by Merriam Webster as "a sum of money or other resources whose principal or interest is set apart for a specific objective." Further, Plaintiff attended classes which were educational and received a benefit of skill and knowledge by attending those classes. See Plaintiff's Response to Admission No. 6.

Simply, Plaintiff received funds to obtain an educational benefit. Under the plain meaning of Section 523(a)(8)(A)(ii), Plaintiff's loans are not dischargeable.

**C.    The Legislative History of Section 523(a)(8)(A) May Be Analyzed to Provide Additional Meaning**

Should this court disagree that the loans satisfy § 523(a)(8)(A)(ii) according to a plain meaning interpretation, legislative history may be analyzed. However courts have noted that though "we now turn to the legislative history as an additional tool of analysis, we do so with the

recognition that only the most extraordinary showing of contrary intentions from those data would justify a limitation on the "plain meaning" of the statutory language." *Garcia v. United States*, 469 U.S. 70, 75 (1984).

In evaluating BAPCPA amendments, numerous courts have recognized that the legislative history with respect to § 523(a)(8) is "sparse." *In re Nunez*, 527 B.R. 410, 413-14; see also *In re Maharaj,* 681 F.3d 558, 572 (4th Cir.2012); see *In re Adinolfi*, 543 B.R. 612, 625 (B.A.P. 9th Cir. 2016) (finding information on the final version of BAPCPA as inconclusive).

> One court noted that "The Report of the House Judiciary Committee states only:
>
> *'Sec. 220. Nondischargeability of Certain Educational Benefits and Loans.* Section 220 of [BAPCPA] amends section 523(a)(8) of the Bankruptcy Code to provide that a debt for a qualified education loan (as defined in section 221(e) [sic] (1) of the Internal Revenue Code) is nondischargeable, unless excepting such debt from discharge would impose an undue hardship on the debtor and the debtor's dependents.'"
>
> See *In re Nunez*, 527 B.R. 410, 413-14 (Bankr. D. Or. 2015) quoting H.R.Rep. No. 109–31, Pt. 1, 109th Cong., 1st Sess. (2005).

As a result of the "sparse" legislative history, courts have examined the intent behind BAPCPA to evaluate its respective amendments. Generally, when interpreting various provisions of the Bankruptcy Code, "courts must 'look to the provisions of the whole law, and to its object and policy.'" *In re Daymon*, 490 B.R. 331, 336 (Bankr. N.D. Ill. 2013) quoting *Hiatt v. Ind. State Student Assistance Comm'n,* 36 F.3d 21, 23 (7th Cir.1994). "Section 523(a)(8) was added to the Bankruptcy Code to address perceived abuses by student borrowers who sought to discharge their student loan debts by filing bankruptcy shortly after graduation, before making any significant attempts at repayment." *In re Daymon*, 490 B.R. 331, 336 (Bankr. N.D. Ill. 2013). By preventing these loans from being discharged, "Congress intended to promote a policy of ensuring availability of educational financing for students." *Id.* (citing *In re Chambers,* 348 F.3d

650, 653–54 (7th Cir.2003)). Other courts have noted that a "thorough analysis of the entire legislative history reveals that Congress had two primary concerns in enacting the legislation: (1) protecting the bankruptcy system from being abused by ensuring that those who could afford to pay their debts did pay; and (2) protecting education and retirement savings from being drained by creditors." *In re Baden*, 396 B.R. 617, 622 (Bankr. M.D. Pa. 2008).

"Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, § 523(a)(8) only applied to obligations for funds received from governmental or nonprofit institutions." *In re Daymon*, 490 B.R. 331, 336 (Bankr. N.D. Ill. 2013). "By amending § 523(a)(8), Congress intended to broaden the scope of nondischargeable debts under that section to recognize an important role played by private institutions in providing educational funding for students." *Id*. In addition, the "expansive nature of the statutory language demonstrates Congress' intent to protect the student loan system and maintain the ability of future students to obtain funding to advance their education." *In re Kidd*, 458 B.R. 612, 621 (Bankr. N.D. Ga. 2011). "Since its enactment as part of the Bankruptcy Reform Act of 1978, Section 523(a)(8) has been amended several times. From these amendments, a general pattern has emerged. Each time, Congress has provided additional protection from discharge to lenders offering student loans." *In re Micko,* 356 B.R. 210, 216-17 (Bankr. D. Ariz. 2006). As noted by the court in *Micko*:

> *Compare, e.g.,* 11 U.S.C. § 523(a)(8) (1988) (excluding from discharge 'educational loan[s] made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit, or nonprofit institution') *with* 11 U.S.C. § 523(a)(8) (1990) (excluding from discharge the same items as before with the addition of 'obligation[s] to repay funds received as an educational benefit') *and* 11 U.S.C. § 523(a)(8) (2005) (excluding from discharge the same items as before with the addition of 'any other educational loan that is a qualified educational loan, as defined in Section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.'" *In re Micko*, 356 B.R. 210, 216-17 (Bankr. D. Ariz. 2006)

BAPCPA also separated § 523(a)(8) into two independent clauses, i.e., (A)(i) and (A)(ii). "BAPCPA's separation between the phrase 'obligation to repay funds received as an educational benefit' from the phrases 'loan made, insured or guaranteed by a governmental unit' and 'program funded in whole or in part by a nonprofit institution' in § 523(a)(8)(A)(i), must be read as encompassing a broader range of educational benefit obligations, such as those in the instant case." *Sensient Techs. Corp. v. Baiocchi* (*In re Baiocchi*), 389 B.R. 828, 831-32 (Bankr. E.D. Wis. 2008). In amending § 523(a)(8), "Congress intended to broaden the scope of non-dischargeable debts under that section to recognize an important role played by private institutions in providing educational funding for students." *In re Daymon*, 490 B.R. 331, 336 (Bankr. N.D. Ill.2013). "Congress has spoken, and what started as an exception limited in time and scope now has an unlimited time horizon and applies to educational loans provided by or supported by government programs, not-for-profit lenders, and forprofit lenders." *Am. Airlines Fed. Credit Union Tr. v. Cardona (In re Cardona),* 2015 Bankr. LEXIS 4321, 6 (Bankr. S.D. Fla. Dec. 22, 2015). Therefore, "while educational benefit is not defined in the Bankruptcy Code, it is clear that, as Congress has amended section 523(a)(8) over time, the meaning of educational benefit has become broader." *Id.*

### C.   Nontraditional educational loan programs still convey an educational benefit to a beneficiary.

Amendments to student loan dischargeability provisions have been enacted to expand nondischargeable student loan obligations. "Section 523(a)(8) was added to the Bankruptcy Code to address perceived abuses by student borrowers who sought to discharge their student loan debts by filing bankruptcy shortly after graduation, before making any significant attempts at repayment." *In re Daymon*, 490 B.R. 331, 336 (Bankr. N.D. Ill. 2013). By preventing these loans from being discharged, "Congress intended to promote a policy of ensuring availability of

educational financing for students." *Id*. (citing *In re Chambers,* 348 F.3d 650, 653–54 (7th Cir.2003)). Other courts have noted that a "thorough analysis of the entire legislative history reveals that Congress had two primary concerns in enacting the legislation: (1) protecting the bankruptcy system from being abused by ensuring that those who could afford to pay their debts did pay; and (2) protecting education and retirement savings from being drained by creditors." *In re Baden*, 396 B.R. 617, 622 (Bankr. M.D. Pa. 2008).

"Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, § 523(a)(8) only applied to obligations for funds received from governmental or nonprofit institutions." *In re Daymon*, 490 B.R. 331, 336 (Bankr. N.D. Ill. 2013). "By amending § 523(a)(8), Congress intended to broaden the scope of nondischargeable debts under that section to recognize an important role played by private institutions in providing educational funding for students." *Id*. In addition, the "expansive nature of the statutory language demonstrates Congress' intent to protect the student loan system and maintain the ability of future students to obtain funding to advance their education." *In re Kidd*, 458 B.R. 612, 621 (Bankr. N.D. Ga. 2011). "Since its enactment as part of the Bankruptcy Reform Act of 1978, Section 523(a)(8) has been amended several times. From these amendments, a general pattern has emerged. Each time, Congress has provided additional protection from discharge to lenders offering student loans." *In re Micko,* 356 B.R. 210, 216-17 (Bankr. D. Ariz. 2006). As noted by the court in *Micko*: "*Compare, e.g.,* 11 U.S.C. § 523(a)(8) (1988) (excluding from discharge 'educational loan[s] made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit, or nonprofit institution') *with* 11 U.S.C. § 523(a)(8) (1990) (excluding from discharge the same items as before with the addition of 'obligation[s] to repay funds received as an educational benefit') *and* 11 U.S.C. § 523(a)(8) (2005) (excluding

from discharge the same items as before with the addition of 'any other educational loan that is a qualified educational loan, as defined in Section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.'" *In re Micko*, 356 B.R. 210, 216-17 (Bankr. D. Ariz. 2006). Therefore, the continual goal of Congress has been to expand those student loan obligations excepted from discharge. Other courts have also previously determined that §523(a)(8)(A)(ii) does not only apply to programs similar to veterans educational benefits. For example, a bar examination loan fell within the scope of §523(a)(8)(A)(ii). See *In re Brown*, 539 B.R. at 858–59. In addition, a loan that a debtor received from a for-profit entity to attend veterinary school in Granada fell within the scope of §523(a)(8)(A)(ii). *In re Rizor*, 553 B.R. at 150.

### D. Many courts have adopted the philosophy that the term educational benefit should be interpreted broadly.

"When analyzing subsection (ii), courts pay no attention to who the lender is, but focus instead entirely on whether, in the plain language of the subsection, the obligation is "to repay funds received as an educational benefit" as reflected by the debtor's agreement and intent to use the funds at the time the obligation arose. *See, e.g., In re Roy*, 2010 Bankr. LEXIS 1218 (Bankr. D.N.J. Apr. 8, 2010) (court concludes that debt owed to a private company for providing tutoring services to debtor's child provided an educational benefit, and was not dischargeable under § 523(a)(8)(A)(ii)); *Carrow v. Chase Loan Serv. (In re Carow), 2011 Bankr. LEXIS 823 (Bankr. D.N.D. Mar. 2, 2011)* (court said in dicta that when debtor certified on each promissory note that she would use the proceeds for qualified higher education expenses for costs associated with her attendance at school, the loans were an "educational benefit" for purposes of § 523(a)(8)(A)(ii)); *Skipworth v. Citibank Student Loan Corp.* (*In re Skipworth*), 2010 Bankr. LEXIS 1201 (Bankr.

N.D. Ala. Apr. 1, 2010) (court found that loan from Citibank incurred for the purpose of paying for debtor's bar review course was an obligation to repay funds received as an educational benefit). Focusing the analysis on the purpose of the loan, rather than the use of the proceeds, also avoids potential inequities that could result from application of a "use" test. See *In re Sokolik*, 635 F.3d 261, 266 (7th Cir. 2011).

Other courts have determined that so long as "the delineated purpose of the loan is for education, whether that purpose is indicated by the title of the loan, or in the application for the loan or extension of credit, and the use of the funds is consistent with the delineated purpose… those funds do constitute 'funds received for an educational benefit' and, in the absence of a showing of undue hardship, the debt is not dischargeable." *Am. Airlines Fed. Credit Union Tr. v. Cardona* (*In re Cardona*), 2015 Bankr. LEXIS 4321, 9-10 (Bankr. S.D. Fla. Dec. 22, 2015). A Ninth Circuit bankruptcy court has found that money borrowed to prepare for and sit for a bar examination constitutes a non-dischargeable loan as it is for an educational benefit. *In re Brown*, 539 B.R. 853, 859 (Bankr. S.D. Cal. 2015). The court noted, that had the debtor "not attended law school, she would not have had the need—nor likely even the opportunity—to take a bar study loan." *In re Brown*, 539 B.R. 853, 859 (Bankr. S.D. Cal. 2015).

Most bankruptcy courts have found loans processed for something other than a qualified educational loan are not dischargeable if they provided the Plaintiff with an educational benefit. A loan for private tutoring is non-dischargeable under § 523(a)(8)(A)(ii) because it provided an educational benefit. *In re Roy*, 2010 Bankr. LEXIS 1218 (Bankr. D.N.J. Apr. 8, 2010) (Bankr. D.N.J. Apr. 8, 2010). In *In re Roy*, the Bankruptcy Court for the District of New Jersey stated that, for a loan to be considered a non-dischargeable education loan under §523(a)(8)(A)(ii), "it is enough that the debt at issue be an obligation to repay funds received as an educational

benefit." *In re Roy* 2010 Bankr. LEXIS 1218, at 2. It is irrelevant whether the educational institution is "government supported, a school, or a for-profit institution." *Id*. The court explained there is "no requirement under §523(a)(8)(A)(ii) that the student have been enrolled full time or be seeking a degree." *Id.* at 2-3.

Analogously, a loan for a private day school is nondischargeable under §523(a)(8)(A)(ii) because it provided an educational benefit. *In re Goldstein,* 2012 Bankr. LEXIS 6034 (Bankr. N.D. Ga. Nov. 26, 2012). In *In re Goldstein,* the Bankruptcy Court for the Northern District of Georgia agreed with the reasoning from the *Roy* court in that "it is enough that the debt at issue be an obligation to repay funds received as an educational benefit." *Id.* at 10 (quoting *In re Roy*, 2010 Bankr. LEXIS 1218 (Bankr. D.N.J. Apr. 8, 2010)). The court explained that §523(a)(8)(A) "exempts from discharge all educational loans, not just loans for higher education." *Id.* at 8.

According to a majority of bankruptcy courts, § 523(a)(8)(A)(ii) should be interpreted broadly. In the present case, by attending the MERP program and Ross University, Plaintiff received an educational benefit. The MERP program was created to prepare students to successfully complete medical school and medical training. Further, Plaintiff attended educational classes as part of the MERP program. Therefore, Plaintiff clearly received an educational benefit through her attendance.

### E.      Other courts have adopted a less expansive view of § 523(a)(8)(A)(ii)

"Some courts have decided without explanation, or assumed, that "educational benefit," as used in § 523(a)(8)(A)(ii), encompasses any loan which relates in some way to education." *In re Campbell*, 547 B.R. 49, 54 (Bankr. E.D.N.Y. 2016).  However, other courts, in interpreting § 523(a)(8), have adopted a less expansive view, finding that "Section 523(a)(8)(A)(ii) 'is not a 'catch-all' provision designed to include every type of credit transaction that bestows an

educational benefit on a debtor.'" *In re Dufrane*, 566 B.R. 28, 39 (Bankr. C.D. Cal. 2017) (citing *Inst. of Imaginal Studies v. Christoff (In re Christoff)*, 527 B.R. 624, 635 n. 9 (9th Cir. BAP 2015). According to some courts, this "broad interpretation of the exception to discharge in § 523(a)(8)(A)(ii) would render superfluous most of the other provisions of § 523(a)(8)." *In re Campbell*, 547 B.R. 49, 54 (Bankr. E.D.N.Y. 2016). Further, if "the term 'educational benefit' includes any student loan, there would be no need to specifically identify, as Congress did in § 523(a)(8)(A)(i) and § 523(a)(8)(B), particular loans extended by particular lenders, which are excepted from discharge, since § 523(a)(8)(A)(ii), if interpreted to extend to all education-related loans, would swallow both provisions." *Id*. Simply, "an expansive reading of § 523(a)(8)(A)(ii) would subsume and make unnecessary § 523(a)(8)(A)(i) and § 523(a)(8)(B)." *In re Dufrane*, 566 B.R. 28, 40 (Bankr. C.D. Cal. 2017). However, "the trend in the Ninth Circuit and elsewhere is to interpret § 523(a)(8)(A)(ii) broadly." *In re Brown*, 539 B.R. 853, 858 (Bankr. S.D. Cal. 2015).

According to the principles of statutory construction, however, using § 523(a)(8)(A)(ii) would not undermine limitations in § 523(a)(8)(A)(i) because § 523(a)(8)(A)(ii) provides its own requirements for determining loan dischargeability. The Loan in this case satisfies the requirements of § 523(a)(8)(A)(ii).

## IV.  Conclusion

Plaintiff's student loan is also nondischargeable under § 523(a)(8)(A)(ii) because it provided an educational benefit to Plaintiff. Therefore, no genuine issue of material fact exists as to Plaintiff's claims and Judgment should be granted in favor of Defendant.

Dated:  June 29, 2017     Respectfully submitted,


          /s/  Michael J. Klima, Jr.
          Michael J. Klima, Jr.
          Peroutka, Miller, Klima & Peters, P.A.
          8028 Ritchie Highway, Suite 300
          Pasadena, MD 21122
          Telephone: (410) 553-9491
          Email:  jklima@peroutkalaw.com
          Counsel for Defendant


## CERTIFICATE OF SERVICE

   I hereby certify that on June 29, 2017 a copy of the foregoing **Defendant, GS2 Grantor Trust 2016-A, assignee of SLF V-2015 Trust's Motion for Summary Judgment** was served upon the following registered ECF participants, **electronically** through the Court's ECF system at the email addresses registered with the Court:


Ronald J. Drescher, Attorney for Plaintiff, rondrescher@drescherlaw.com


   AND via ordinary U.S. Mail service to the following non-registered ECF participants:

Golden Tree Asset Management, LP
300 Park Avenue, 21st floor
New York, NY 10022

Citibank, N.A.
P.O. Box 6191
Sioux Falls, SD 57117-6191

DeVry Medical International, Inc.
630 U.S. Highway One
North Brunswick, NJ 08902

University Accounting Service, LLC
P.O. Box 918
Brookfield, WI 53008-0918

GSED Trust
200 West Street, 26th floor
New York, NY 10282

American University of Antigua
c/o Manipal Education Americas, LLC
One Battery Park Plaza, 33rd floor
New York, NY 10004

Dated:  June 29, 2017                    Respectfully submitted,


/s/  Michael J. Klima, Jr.
Michael J. Klima, Jr.
Peroutka, Miller, Klima & Peters, P.A.
8028 Ritchie Highway, Suite 300
Pasadena, MD 21122
Telephone: (410) 553-9491
Email:  jklima@peroutkalaw.com

Counsel for Defendant