**EXECUTION VERSION**

**TRUST AGREEMENT**

**OF**

**GS2 GRANTOR TRUST 2016-A**

among

**GS2 DEPOSITOR 2016-A SPV, LLC**
as Settlor,

**GOAL STRUCTURED SOLUTIONS, INC.,**
as Administrator,

And

**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,**
as Underlying Grantor Trust Trustee

Dated as of December 23, 2016

## Table of Contents

**Page**

**ARTICLE I - DEFINITIONS.** ........................................................................................... 1

SECTION 1.1     Capitalized Terms ................................................................................ 1
SECTION 1.2     Definitions of General Terms and Other Interpretive Provisions................ 4

**ARTICLE II - ORGANIZATION.**........................................................................................... 5

SECTION 2.1     Name ................................................................................................ 5
SECTION 2.2     Office ................................................................................................ 5
SECTION 2.3     Purposes and Powers.......................................................................... 5
SECTION 2.4     Appointment of Underlying Grantor Trust Trustee ................................... 7
SECTION 2.5     Trust Estate; Conveyance of the Portfolio Student Loans ........................... 7
SECTION 2.6     Declaration of Trust ........................................................................... 7
SECTION 2.7     Title to Trust Estate........................................................................... 7
SECTION 2.8     Federal Income Tax Matters ................................................................ 8

**ARTICLE III - TRUST CERTIFICATES AND TRANSFER OF INTERESTS.**................... 8

SECTION 3.1     Initial Ownership ............................................................................... 8
SECTION 3.2     The Trust Certificate .......................................................................... 8
SECTION 3.3     Registration of Transfer of Trust Certificates......................................... 8
SECTION 3.4     Mutilated, Destroyed, Lost or Stolen Trust Certificates ............................. 9
SECTION 3.5     Form of the Trust Certificate ............................................................... 9

**ARTICLE IV - APPLICATION OF TRUST FUNDS; CERTAIN DUTIES.**......................... 9

SECTION 4.1     Establishment of Trust Account.............................................................. 9
SECTION 4.2     Funding and Application of Trust Account .............................................. 9
SECTION 4.3     Portfolio Student Loans .................................................................... 10
SECTION 4.4     Distributions.................................................................................... 11
SECTION 4.5     Reliance on Instructions; No Segregation of Monies; No Interest ............. 12

**ARTICLE V - CONCERNING THE PORTFOLIO STUDENT LOANS.** ........................... 12

SECTION 5.1     Enforcement of Portfolio Student Loans ............................................... 12
SECTION 5.2     Administration and Collection of Portfolio Student Loans ........................ 13
SECTION 5.3     Enforcement of Agreements ............................................................... 14
SECTION 5.4     Change in Servicer, Master Servicer or Settlor ..................................... 14
SECTION 5.5     Representations and Warranties of the Settlor....................................... 14
SECTION 5.6     Sponsor Advances; Limited Make Whole ............................................. 16

**ARTICLE VI - AUTHORITY, DUTIES AND RESTRICTIONS OF UNDERLYING
GRANTOR TRUST TRUSTEE.** ...................................................................................... 16

SECTION 6.1     General Authority ........................................................................... 16
SECTION 6.2     General Duties ................................................................................ 16

SECTION 6.3     Action upon Instruction ................................................................ 20
SECTION 6.4     No Duties Except as Specified in this Agreement or in Instructions........... 21
SECTION 6.5     No Action Except under Specified Documents or Instructions .................. 22
SECTION 6.6     Restrictions ................................................................................ 22
SECTION 6.7     Prior Consent of Majority Certificateholders with Respect to Certain Matters
                22

**ARTICLE VII - COMPENSATION OF UNDERLYING GRANTOR TRUST TRUSTEE.**
**.................................................................................................................... 23**

SECTION 7.1     The Underlying Grantor Trust Trustee's Fees and Expenses ..................... 23
SECTION 7.2     Indemnification ........................................................................... 24

**ARTICLE VIII - TERMINATION OF TRUST AGREEMENT............................................. 24**

SECTION 8.1     Termination of Trust Agreement ................................................... 24

**ARTICLE IX - SUCCESSOR UNDERLYING GRANTOR TRUST TRUSTEES AND**
**ADDITIONAL TRUSTEES.......................................................................................... 25**

SECTION 9.1     Resignation of the Underlying Grantor Trust Trustee ................................ 25
SECTION 9.2     Removal of the Underlying Grantor Trust Trustee...................................... 25
SECTION 9.3     Appointment of a Successor Underlying Grantor Trust Trustee ................ 25
SECTION 9.4     Successor Underlying Grantor Trust Trustee ........................................... 26
SECTION 9.5     Accounts .................................................................................... 26
SECTION 9.6     Appointment of Co-Trustee or Separate Trustee ....................................... 26
SECTION 9.7     Corporate Trustee Required; Eligibility; Disqualification.......................... 28

**ARTICLE X - MISCELLANEOUS. ............................................................................. 28**

SECTION 10.1    Supplements and Amendments.......................................................... 28
SECTION 10.2    No Legal Title to Trust Estate in Certificateholder ................................... 29
SECTION 10.3    Limitations on Rights of Others....................................................... 29
SECTION 10.4    Notices ...................................................................................... 29
SECTION 10.5    Severability ................................................................................ 30
SECTION 10.6    Separate Counterparts.................................................................... 30
SECTION 10.7    Successors and Assigns................................................................... 31
SECTION 10.8    No Petition ................................................................................ 31
SECTION 10.9    No Recourse ............................................................................... 32
SECTION 10.10   Headings ................................................................................... 32
SECTION 10.11   Governing Law ........................................................................... 32
SECTION 10.12   Administrator ............................................................................. 32
SECTION 10.13   Waiver of Jury Trial...................................................................... 32
SECTION 10.14   Not Acting in Individual Capacity .................................................... 33
SECTION 10.15   Underlying Grantor Trust Trustee Not Liable for Trust Certificate ........... 33
SECTION 10.16   Multiple Roles............................................................................. 33

Exhibit A       Form of Trust Certificate

# TRUST AGREEMENT

THIS TRUST AGREEMENT, made as of December 23, 2016 (as from time to time amended, supplemented or otherwise modified and in effect, this "Agreement"), by and among **GS2 DEPOSITOR 2016-A SPV, LLC**, a Delaware limited liability company (in its capacity as settlor hereunder, the "Settlor"), **GOAL STRUCTURED SOLUTIONS, INC.**, a Delaware corporation, (in its capacity as administrator hereunder, the "Administrator") and **THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.**, a national banking association duly established, existing and authorized to accept and execute trusts of the character herein set out under and by virtue of the laws of the United States ("BNY" and in its capacity as trustee hereunder, the "Underlying Grantor Trust Trustee"), hereby establishes the **GS2 GRANTOR TRUST 2016-A** (the "Grantor Trust") as a New York common law trust for the purposes of issuing the GS2 Grantor Trust 2016-A Certificate (the "Trust Certificate"), evidencing the 100% beneficial interest in the Grantor Trust, to the Settlor in exchange for the Trust Estate sold to the Underlying Grantor Trust Trustee hereunder.

NOW THEREFORE, the Underlying Grantor Trust Trustee hereby agrees to hold all assets and funds in trust transferred to it hereunder and to issue the Trust Certificate, as follows:

## ARTICLE I - DEFINITIONS.

SECTION 1.1 Capitalized Terms.  For all purposes of this Agreement, capitalized terms used herein and not otherwise defined shall have the meanings assigned thereto in the Indenture, and the following terms shall have the meanings set forth below:

**"Adverse Grantor Trust Event"** shall have the meaning given such term in the Indenture.

**"Affiliates"** means, with respect to any Person, any other Person controlling, controlled by or under common control with such Person.  For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.  A Person shall not be deemed to be an Affiliate of any specified Person solely because such other Person has the contractual right or obligation to manage such specified Person or act as servicer with respect to the financial assets of such specified Person unless such other Person controls the specified Person through equity ownership or otherwise.

**"Assignment of Asset Purchase Agreement"** means that certain Assignment of Private Student Loans Asset Purchase Agreement, dated as of December 23, 2016, by the Seller.

**"Authorized Representative,"** when used with reference to the Settlor, shall mean the Administrator and any Person duly authorized by the Amended and Restated Trust Agreement of the Settlor to act on the Settlor's behalf.

**"Certificateholder"** means the registered owner of the Trust Certificate.

"**Citibank**" means Citibank, N.A., a national banking association, and its successors in interest.

"**Citibank Sale Agreement**" means that certain Loan Purchase Agreement dated as of March 26, 2015, among the Seller, Citibank, N.A. and certain other parties.

"**Collection Account**" means the Trust Account by that name created as established pursuant to Section 4.1 of this Agreement.

"**Cut-Off Date**" means the close of business on September 30, 2016.

"**Date of Issuance**" means December 23, 2016.

"**Fiscal Year**" means the fiscal year of the Settlor as established from time to time.

"**Grantor Trust**" means the GS2 Grantor Trust 2016-A, a New York common law trust established by this Agreement, acting by and through the Underlying Grantor Trust Trustee.

"**Indenture**" means the Indenture of Trust, dated as of the Date of Issuance between the Settlor and the Indenture Trustee, including any supplement thereto or amendment thereof.

"**Indenture Trustee**" means The Bank of New York Mellon Trust Company, N.A., as trustee under the Indenture, and its successors pursuant to the Indenture.

"**Majority Certificateholders**" means, as of any determination date, the holder or holders of more than 50% of the Par Amount of the Outstanding Residual Certificates.

"**Master Servicer**" means Turnstile Capital Management, LLC, a Delaware limited liability company and its successors and assigns and any other Person or Persons as may become a Master Servicer pursuant to the terms of the Master Servicing Agreement.

"**Master Servicing Agreement**" means the Master Servicing Agreement, dated as of the Date of Issuance among the Master Servicer, the Settlor, the Underlying Grantor Trust Trustee on behalf of the Grantor Trust and the Indenture Trustee, pursuant to which the Master Servicer agrees to monitor the servicing by the Servicer of the Portfolio Student Loans held in the Underlying Trust.

"**Monthly Payment Date**" means the 25th day of each month (or, if any such day is not a Business Day, the next succeeding Business Day), commencing January 25, 2017.

"**Officer's Certificate**" means a certificate signed by an Authorized Representative of the Settlor.

"**Opinion of Counsel**" means one or more written opinions of counsel who may be employees of or counsel to the Settlor and which shall be acceptable to the Settlor, and which opinion or opinions shall be addressed to the Grantor Trust and the Underlying Grantor Trust Trustee, and shall be in form and substance acceptable to the Underlying Grantor Trust Trustee.

"**Person**" means any individual, corporation, limited liability company, partnership, joint venture, association, joint stock company, trust, incorporated organization or government or any agency or political subdivision thereof.

"**Portfolio Student Loans**" means the loans acquired by the Grantor Trust from the Settlor pursuant to this Agreement on the Date of Issuance.

"**Principal Office**" means when used with respect to the Underlying Grantor Trust Trustee, the designated office of the corporate trust department of the Underlying Grantor Trust Trustee at which at any time this Agreement shall be administered, which office is the address specified in Section 10.4 hereof, or such other address as the Underlying Grantor Trust Trustee may designate from time to time by notice to the Settlor, the Administrator, the Servicer, the Master Servicer and the Indenture Trustee.

"**Responsible Officer**" means, when used with respect to the Underlying Grantor Trust Trustee, any officer within the corporate trust department of the Underlying Grantor Trust Trustee, including any vice president, assistant vice president, assistant secretary, assistant treasurer, trust officer or any other officer of the Underlying Grantor Trust Trustee who customarily performs functions similar to those performed by Persons who at the time shall be such officers, respectively, or to whom any corporate trust matter is referred because of such person's knowledge of and familiarity with the particular subject and in each case who shall have direct responsibility for the administration of this Agreement.

"**Sale Agreements**" means the Purchaser Sale Agreement and the Citibank Sale Agreement.

"**Servicing Agreement**" means (i) that certain Private Student Loan Servicing Agreement, dated as of October 23, 2015, by and between the Seller and the Servicer (as assigned by the Seller to the Underlying Grantor Trust Trustee pursuant to the Assignment of Servicing Agreement, dated as of the Date of Issuance), and (ii) upon satisfaction of the Approval Condition with respect thereto, any other agreement entered into between the Settlor, the Underlying Grantor Trust Trustee, the Master Servicer and a Servicer (or, under the circumstances described in the Indenture, between the Indenture Trustee and a Servicer), under which the Servicer agrees to service and collect Portfolio Student Loans, and under which the Indenture Trustee is an express third party beneficiary or permitted assignee (if not a party thereto), but does not include any agreement pursuant to which a collection agency attempts to collect delinquent Portfolio Student Loans or Charged-Off Loans.

"**Seller**" means SLF V-2015 Trust, a New York common law trust. For all purposes herein, and for the avoidance of doubt, whenever the Seller is obligated to take any action or is under any obligation, the Seller shall be read to mean the Seller Trustee, not its own capacity but solely as trustee of the Seller, acting for and on behalf of the Seller.

"**Settlor**" means GS2 Depositor 2016-A SPV, LLC, a Delaware limited liability company.

"**Transaction Documents**" means the Indenture, the Administration Agreement, the Servicing Agreement, the Trust Agreement, the Master Servicing Agreement, the Purchaser Sale Agreement and this Agreement.

"**Trust Account**" means the Collection Account.

"**Trust Certificate**" means the certificate issued by the Grantor Trust to the Settlor hereunder, substantially in the form of <u>Exhibit A</u> hereto, evidencing the 100% beneficial interest in the Grantor Trust.

"**Trust Certificate Distribution Amounts**" means, as of any Monthly Payment Date, the sum of the following:

(1)     all amounts received in the Collection Account and not yet paid out as of the last day of the related Collection Period,

(2)     other amounts received in the Collection Account after the last day of the related Collection Period and at least five (5) Business Days before such Monthly Payment Date, to the extent necessary, after giving effect to amounts in the Distribution Account that constitute Available Funds under the Indenture, to increase the balance of Available Funds under the Indenture to an amount sufficient to pay the Senior Transaction Fees, the Class A Priority Principal Distribution Amount, interest on the Class A-1, interest on the Class A-2 Notes and interest on the Class B Notes for that Monthly Payment Date, and

(3)     on the Monthly Payment Date on which all amounts in the Distribution Account created under the Indenture become Available Funds under the Indenture (as determined by the Indenture Trustee), all other amounts in the Collection Account;

minus

(1) in the case of the first Monthly Payment Date, to the extent the Purchase Price (as defined in the Citibank Sale Agreement) under the Purchaser Sale Agreement exceeds the adjusted Purchase Price under the Purchaser Sale Agreement, any difference in such amounts (to the extent the Administrator provides the Underlying Grantor Trust Trustee with notice of such occurrence)(such amounts, the **"Excess Purchase Amounts"**).

For each Monthly Payment Date, the "related" Collection Period is the Collection Period that ends on the last day of the month immediately preceding the month in which such Monthly Payment Date occurs.

SECTION 1.2 <u>Definitions of General Terms and Other Interpretive Provisions</u>.  All terms defined in this Agreement shall have the defined meanings when used in any certificate or other document delivered pursuant hereto unless otherwise defined therein.  For purposes of this Agreement and all such certificates and other documents, unless the context otherwise requires: (a) accounting terms not otherwise defined in this Agreement, and accounting terms partly defined in this Agreement to the extent not defined, shall have the respective meanings given to them under generally accepted accounting principles; (b) terms defined in Article 9 of the UCC as in effect in the State of New York and not otherwise defined in this Agreement are used as

722605837 14459646

defined in that Article; (c) the words "hereof," "herein" and "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular provision of this Agreement; (d) references to any Article, Section, Schedule or Exhibit are references to Articles, Sections, Schedules and Exhibits in or to this Agreement, and references to any paragraph, subsection, clause or other subdivision within any Section or definition refer to such paragraph, subsection, clause or other subdivision of such Section or definition; (e) the term "including" means "including without limitation"; (f) references to any Person include that Person's successors and assigns; (g) headings are for purposes of reference only and shall not otherwise affect the meaning or interpretation of any provision hereof; and (h) terms shall be equally applicable to both the singular and the plural forms thereof.

## ARTICLE II - ORGANIZATION.

SECTION 2.1 <u>Name</u>.  The common law trust created hereby shall be known as "GS2 Grantor Trust 2016-A", in which name the Underlying Grantor Trust Trustee may engage in the transactions contemplated hereby, make and execute contracts and other instruments on behalf of such trust and sue and be sued on behalf of the Grantor Trust.

SECTION 2.2 <u>Office</u>.  The office of the Grantor Trust shall be in care of the Underlying Grantor Trust Trustee at the Principal Office or at such other address as the Underlying Grantor Trust Trustee may designate by written notice to the Settlor, the Administrator, the Master Servicer, the Servicer and the Indenture Trustee.

SECTION 2.3 <u>Purposes and Powers</u>.

(a)    The purpose of the Grantor Trust is, and the Underlying Grantor Trust Trustee on behalf of the Grantor Trust shall have the power and authority, to engage in the following activities, and the activities incidental thereto:

(i)    to issue the Trust Certificate pursuant to this Agreement and to pay distributions on the Trust Certificate;

(ii)    to establish the Collection Account;

(iii)    to acquire and own the Portfolio Student Loans and other related assets set forth in this Agreement pursuant to the terms hereof;

(iv)    to hold and distribute the Trust Estate to the Certificateholder;

(v)    to enter into and perform its obligations under the Transaction Documents to which it is a party;

(vi)    to pledge the Trust Estate to the Indenture Trustee, pursuant to the terms of the Indenture; and

(vii)    to engage in those activities, including entering into agreements (including, without limitation, the Purchaser Sale Agreement, the Servicing Agreement, the Master Servicing Agreement and the Administration Agreement), that are necessary, suitable or

convenient to accomplish the foregoing or are incidental thereto or connected therewith; *provided*, *however*, that nothing herein shall give the Underlying Grantor Trust Trustee or any other person acting on behalf of the Grantor Trust the power to accept additional contributions, to acquire Portfolio Student Loans after the Date of Issuance (other than the limited acquisition of a Portfolio Student Loan disbursement as provided for in <u>Section 4.2</u>) or otherwise reinvest any proceeds from the sale or liquidation of any Grantor Trust assets, and neither the Underlying Grantor Trust Trustee nor any other person acting on behalf of the Grantor Trust shall have the power to vary the investment of the Certificateholder in a manner that would prevent the Grantor Trust from qualifying as a grantor trust for United Stated federal income tax purposes.

(b)     In addition, the Underlying Grantor Trust Trustee shall comply with the following requirements with respect to the Grantor Trust:

(i)     maintain books and records separate from any other Person;

(ii)     maintain its bank accounts separate from any other Person;

(iii)     conduct its permitted business in its own name and not that of the Settlor or any Affiliate;

(iv)     other than as contemplated by the Transaction Documents, pay its own liabilities and expenses only out of its own funds;

(v)     not guarantee or become obligated for the debts of any other Person;

(vi)     not hold out its credit as being available to satisfy the obligation of any other Person;

(vii)     not acquire the obligations or securities of the Settlor or its Affiliates;

(viii)     other than as contemplated by the Transaction Documents, not make loans to any other person or entity or buy or hold evidence of indebtedness issued by any other Person;

(ix)     other than as contemplated by the Transaction Documents and related documentation, not pledge its assets for the benefit of any other Person;

(x)     hold itself out as separate from the Certificateholder and not conduct any business in the name of the Certificateholder;

(xi)     correct any known misunderstanding regarding its separate identity;

(xii)     not identify itself as a division of any other Person; and

(xiii)     except as required or specifically provided in this Agreement, conduct business with the Certificateholder or any Affiliate thereof only on an arm's-length basis.

(c)     The Underlying Grantor Trust Trustee on behalf of the Grantor Trust is hereby authorized to engage in the activities stated in paragraphs (a) and (b) above.  The Underlying

722605837 14459646

Grantor Trust Trustee on behalf of the Grantor Trust shall not engage in any activity other than in connection with the foregoing or other than as required or authorized by the terms of this Agreement or the other Transaction Documents.

SECTION 2.4 Appointment of Underlying Grantor Trust Trustee.  The Settlor hereby appoints the Underlying Grantor Trust Trustee as trustee of the Grantor Trust, to have all the rights, powers and duties set forth herein, and the Underlying Grantor Trust Trustee hereby accepts such appointment.

SECTION 2.5 Trust Estate; Conveyance of the Portfolio Student Loans.

(a)    Concurrently with the execution of this Agreement and in exchange for the Trust Certificate, the Settlor does hereby sell, contribute, transfer, convey and assign to the Underlying Grantor Trust Trustee on behalf of the Grantor Trust, without recourse, all of its right, title and interest in and to the Trust Estate (including the Portfolio Student Loans).  If the Administrator notifies the Settlor in writing that the adjusted Purchase Price (as defined in the Purchaser Sale Agreement) exceeds the related Purchase Price under the Purchaser Sale Agreement, the Settlor shall deposit such excess into the Collection Account.

(b)    Each of the Settlor and the Underlying Grantor Trust Trustee on behalf of the Grantor Trust intends the transactions hereunder to constitute a true sale of the Portfolio Student Loans and related assets by the Settlor, providing the Underlying Grantor Trust Trustee on behalf of the Grantor Trust with all of the right, title and interest of the Settlor in and to the Portfolio Student Loans and related assets, and no party hereto intends the transactions contemplated hereunder to be, or for any purpose to be characterized as, a loan from (i) the Underlying Grantor Trust Trustee on behalf of the Grantor Trust or the Grantor Trust, on the one hand, to (ii) the Settlor, on the other hand.

SECTION 2.6 Declaration of Trust.  The Underlying Grantor Trust Trustee hereby declares that it will hold the Trust Estate in trust upon and subject to the conditions set forth herein for the use and benefit of the Certificateholder, subject to the obligations of the Underlying Grantor Trust Trustee on behalf of the Grantor Trust under the Transaction Documents to which the Underlying Grantor Trust Trustee on behalf of the Grantor Trust is a party.  It is the intention of the parties hereto that the Grantor Trust constitute a common law trust under the laws of the State of New York, and that this Agreement constitute the governing instrument of the Grantor Trust.  It is further the intention of the parties hereto that the Grantor Trust constitute a "grantor trust" for federal income tax purposes under the Internal Revenue Code of 1986, as amended, and all parties hereto agree to treat this Agreement, the Trust Estate, any distributions therefrom and the Trust Certificate consistently with such characterization.  The provisions of this Agreement shall be interpreted consistently with such characterization.

SECTION 2.7 Title to Trust Estate.  Legal title to all the Trust Estate shall be vested at all times in the Underlying Grantor Trust Trustee, as fiduciary on behalf of the Grantor Trust, until this Agreement terminates pursuant to Article VIII, except where applicable law in any jurisdiction requires title to any part of the Trust Estate to be vested in a co-trustee and/or a separate trustee, as the case may be.

SECTION 2.8 <u>Federal Income Tax Matters</u>.  The Underlying Grantor Trust Trustee shall treat the Grantor Trust as a grantor trust for United States federal income tax purposes, and the Settlor shall not take an inconsistent position on any United States federal, state or local tax return.  Notwithstanding anything to the contrary in this Agreement, neither the Underlying Grantor Trust Trustee, the Settlor, the Majority Certificateholders nor any Certificateholder shall have the authority to take any action that would cause the Grantor Trust to fail to be characterized for federal income tax purposes as a grantor trust.  The Administrator shall be responsible for the preparation and filing of any tax returns and related forms with respect to the Grantor Trust and for the distribution of any such returns and related forms or other tax-related information to the Certificateholder.  Further, it is the intention of the parties to this Agreement that beneficial ownership of the Portfolio Student Loans be evidenced by "pass-through certificates" (within the meaning of Treasury regulation section 1.871-14(d)) issued by the Grantor Trust and transferable only by surrender of the old certificate and the issuance of a new certificate to the new holder.

## ARTICLE III - TRUST CERTIFICATES AND TRANSFER OF INTERESTS.

SECTION 3.1 <u>Initial Ownership</u>.  Upon the formation of the Grantor Trust, the contribution by the Settlor pursuant to <u>Section 2.5</u> and the issuance of the Trust Certificate, the Settlor shall be the sole beneficiary of the Grantor Trust.

SECTION 3.2 <u>The Trust Certificate</u>.  The Trust Certificate shall be issued to the Settlor or its designee as a single Trust Certificate upon the deposit by the Settlor of the amounts described in <u>Section 2.5</u> hereof.  The Trust Certificate shall be executed on behalf of the Grantor Trust by manual or facsimile signature of an authorized officer of the Underlying Grantor Trust Trustee, and the Underlying Grantor Trust Trustee shall have the power and authority and it is hereby authorized and empowered, in the name and on behalf of the Grantor Trust, to authorize, execute, issue and deliver the Trust Certificate.  The Trust Certificate shall be dated the date of its issuance.

SECTION 3.3 <u>Registration of Transfer of Trust Certificates</u>.

(a)     The Administrator shall keep or cause to be kept, at its principal office, a Trust Certificate register (the "<u>Trust Certificate Register</u>") in which, subject to such reasonable regulations as it may prescribe, the Administrator shall provide for the registration of the Trust Certificate and of transfers and exchanges thereof as herein provided.  The Trust Certificate may not be sold, transferred, assigned, participated, pledged, or otherwise disposed of to any Person except in accordance with the provisions of this Section, and any attempted transfer in violation of this Section shall be null and void.  The Administrator shall provide the Underlying Grantor Trust Trustee with a copy of the Trust Certificate Register promptly upon its request.

(b)     The Trust Certificate may not be sold, assigned or transferred (including by pledge or hypothecation) except (i) an assignment on the Date of Issuance from the Settlor to the Issuer, (ii) the assignment to the Indenture Trustee pursuant to the Indenture, (iii) an assignment to a successor of the Issuer permitted in accordance with Section 5.7 of the Indenture, or (iv) a transfer effected by the Indenture Trustee pursuant to Article VI of the Indenture.

8

(c)    No service charge shall be made for any registration of transfer of the Trust Certificate, but the Underlying Grantor Trust Trustee may require payment of a sum sufficient to cover any tax or governmental charge that may be imposed in connection with any transfer of the Trust Certificate.

SECTION 3.4 Mutilated, Destroyed, Lost or Stolen Trust Certificates. If (a) a mutilated Trust Certificate shall be surrendered to the Underlying Grantor Trust Trustee, or if the Underlying Grantor Trust Trustee shall receive evidence to its satisfaction of the destruction, loss or theft of the Trust Certificate and (b) there shall be delivered to the Underlying Grantor Trust Trustee such security or indemnity as may be required by it to save it harmless, the Underlying Grantor Trust Trustee on behalf of the Grantor Trust shall execute and the Underlying Grantor Trust Trustee shall authenticate and deliver, in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Trust Certificate, a new Trust Certificate.  In connection with the issuance of a new Trust Certificate under this Section, the Underlying Grantor Trust Trustee may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection therewith.  Any duplicate Trust Certificate issued pursuant to this Section shall constitute conclusive evidence of the ownership interest in the Grantor Trust, as if originally issued, whether or not the lost, stolen or destroyed Trust Certificate shall be found at any time.

SECTION 3.5 Form of the Trust Certificate.  The Trust Certificate, upon original issuance, will be issued in the form of a definitive Trust Certificate in substantially the form set forth on Exhibit A and shall be registered in the name of "Goal Structured Solutions Trust 2016-A" as the initial registered owner thereof and designated transferee of the Settlor.  Upon the issuance of the Trust Certificate, the Underlying Grantor Trust Trustee shall recognize the Issuer as the Certificateholder.  The Trust Certificate shall be printed, lithographed or engraved or may be produced in any other manner as is reasonably acceptable to the Underlying Grantor Trust Trustee, as evidenced by its execution thereof.

**ARTICLE IV - APPLICATION OF TRUST FUNDS; CERTAIN DUTIES.**

SECTION 4.1 Establishment of Trust Account.

(a)    The Underlying Grantor Trust Trustee, for the benefit of the Certificateholder, shall cause to be established and maintained, in the name of the Grantor Trust, the "Collection Account" bearing a designation clearly indicating that the funds deposited therein are held for the benefit of the Certificateholder, which Trust Account shall be established and maintained with the Underlying Grantor Trust Trustee.

(b)    All funds on deposit from time to time in the Trust Account and all proceeds thereof shall be part of the Trust Estate.  Except as otherwise provided herein, the Collection Account shall be under the sole dominion and control of the Underlying Grantor Trust Trustee for the benefit of the Certificateholder. All amounts in the Collection Account shall remain uninvested.

SECTION 4.2 Funding and Application of Trust Account.  Amounts shall be credited to and transferred from the Collection Account as follows:

9

(i)     The Underlying Grantor Trust Trustee shall credit to Collection Account, as and when received:  (1) all amounts received as principal and interest payments with respect to the Portfolio Student Loans, including net recoveries with respect to Charged-Off Loans, (2) proceeds of any sale or assignment of Portfolio Student Loans as described under Section 4.3 hereof, and (3) all amounts received as income from investment securities in the Collection Account.

(ii)     On each Monthly Payment Date, the Underlying Grantor Trust Trustee shall apply amounts in the Collection Account as provided in Section 4.4 hereof in accordance with the Monthly Servicing Report, which shall be delivered to the Underlying Grantor Trust Trustee at least three (3) Business Days prior to each Monthly Payment Date

SECTION 4.3 Portfolio Student Loans.  The Portfolio Student Loans shall be a part of the Trust Estate.  Portfolio Student Loans may be sold or assigned by the Underlying Grantor Trust Trustee only in connection with (a) a sale of all Portfolio Student Loans as described in the succeeding paragraph, (b) a sale of loans arranged by the Administrator in connection with a Limited Make Whole Payment by Citibank, N.A., or (c) any sale or assignment of a Charged-Off Loan as provided in the Servicing Agreement.  The Underlying Grantor Trust Trustee shall also sell Portfolio Student Loans as directed by the Indenture Trustee (acting as provided in the Indenture) pursuant to Article VI of the Indenture.

The Portfolio Student Loans shall be sold to the Majority Certificateholders upon the exercise of the Certificateholder Optional Redemption (as defined below), and shall be sold to the Majority Certificateholders or the Administrator, as applicable, upon the exercise of the Optional Redemption (as defined below).

At the option of and upon the written direction of the Majority Certificateholders, on or after the Monthly Payment Date in June 2018 and until the Monthly Payment Date immediately preceding Optional Redemption Availability Date (the "Certificateholder Optional Redemption"), the Majority Certificateholders will have the right to purchase either (i) all of the Notes then Outstanding for an amount equal to the aggregate Outstanding Principal Amount of the Notes, together with all accrued and unpaid interest thereon (the "Note Redemption Price") or (ii) all of the Portfolio Student Loans for an amount equal to the greater of (a) the fair market value of the Portfolio Student Loans or (b) an amount sufficient, together with amounts in the Collection Account, the Distribution Account and the Reserve Account, to pay the aggregate Outstanding Principal Amount of the Notes, together with all accrued and unpaid interest thereon and all other obligations of the Issuer under the Indenture on the next Monthly Payment Date (the "Loan Redemption Price").  Such option may be exercised on any Monthly Payment Date on or after the Monthly Payment Date in June 2018 and until the Optional Redemption Availability Date by providing notice of such exercise no later than the tenth (10th) Business Day preceding such Monthly Payment Date (a "Certificateholder Redemption Notice") to the Indenture Trustee and the Administrator.

At the option of and upon the written direction of either the Administrator or the Majority Certificateholders, as the case may be (the "Optional Redemption"), on or after the first Monthly Payment Date on which the Pool Balance is less than 10% of the Initial Pool Balance (the "Optional Redemption Availability Date"), shall have the right to purchase either (i) all of the

Notes then Outstanding for an amount equal to the Note Redemption Price (the "Optional Note Redemption") or (ii) all of the Portfolio Student Loans for an amount equal to the Loan Redemption Price (the "Optional Loan Redemption").

An Optional Loan Redemption or Optional Note Redemption may be exercised on any Monthly Payment Date on or after the Optional Redemption Availability Date by providing notice of such exercise no later than (i) with respect the Administrator, the twentieth (20th) Business Day, or (ii) with respect to the Majority Certificateholders, the tenth (10th) Business Day, preceding such Monthly Payment Date (a "Redemption Notice") to the Indenture Trustee and, if provided by (i) the Administrator, each Certificateholder, or (ii) the Majority Certificateholders, the Administrator; *provided*, *that,* if the Redemption Notice provides that the Majority Certificateholders or the Administrator, as applicable, is exercising its right to purchase all of the Portfolio Student Loans, then the Redemption Notice will also be provided to the Underlying Grantor Trust Trustee. Any Redemption Notice shall be binding and irrevocable; *provided*, *however*, that if both the Administrator and Majority Certificateholders deliver a Redemption Notice with respect to any Monthly Payment Date, then the Majority Certificateholders shall exercise the Optional Redemption on such Monthly Payment Date (and the Administrator's Redemption Notice for such Monthly Payment Date shall be deemed void).

If neither the Majority Certificateholders nor the Administrator exercises its respective right to an Optional Loan Redemption or an Optional Note Redemption on the Optional Redemption Availability Date, a Residual Certificates Lockout Trigger will be in effect on each Monthly Payment Date thereafter until the Notes are repaid in full.

Any Portfolio Student Loans sold or assigned as provided in this Section shall, upon receipt of the purchase price therefor be released from the Trust Estate and shall no longer be considered Portfolio Student Loans, and the revenues from such Portfolio Student Loans shall no longer be available for distributions with respect to the Trust Certificate; *provided*, *that*, the amount of such purchase price paid by the Majority Certificateholders may be reduced by any amounts owing to the Majority Certificateholders on the related Monthly Payment Date out of such purchase price pursuant to the payment priorities set forth in the Indenture. Upon receipt of a written instruction from the Settlor, the Majority Certificateholders or the Administrator directing the assignment of Portfolio Student Loans as provided in this Section 4.3 and upon receipt of the purchase price therefor, the Underlying Grantor Trust Trustee shall execute such documents (in form and substance satisfactory to the Underlying Grantor Trust Trustee) as the Majority Certificateholders, the Administrator or the Settlor may direct in writing to join in such assignment or evidence the release of such Portfolio Student Loans from the Trust Estate. The proceeds of any such sale shall be deposited into the Collection Account, as provided in Section 4.2.

SECTION 4.4 Distributions. No later than 10:00 a.m. Eastern time on each Monthly Payment Date, the Underlying Grantor Trust Trustee shall transfer to the Distribution Account with the funds on deposit in the Collection Account in an amount equal to the Trust Certificate Distribution Amounts, which transfers shall represent distributions to the Certificateholder and the Underlying Grantor Trust Trustee shall transfer to the Settlor any Excess Purchase Amounts.

It is the intent of the parties that no withholding tax will be imposed on the Grantor Trust's distributions (or allocations of income) to the Settlor. In the event, however, that any withholding tax is imposed on the Grantor Trust's payment (or allocations of income) to the Settlor or any Certificateholder, such tax shall reduce the amount otherwise distributable to the Settlor or such Certificateholder in accordance with this Section. The Underlying Grantor Trust Trustee is hereby authorized and directed to retain from amounts otherwise distributable to the Settlor sufficient funds for the payment of any tax that is legally owed from the Grantor Trust (but such authorization shall not prevent the Underlying Grantor Trust Trustee from contesting any such tax in appropriate proceedings, and withholding payment of such tax, if permitted by law, pending the outcome of such proceedings). The amount of any withholding tax imposed with respect to the Settlor or such Certificateholder shall be treated as cash distributed to the Settlor or such Certificateholder at the time it is withheld from the Grantor Trust and remitted to the appropriate taxing authority. If there is a possibility that withholding tax is payable with respect to a distribution, the Underlying Grantor Trust Trustee may in its sole discretion withhold such amounts in accordance with this Section 4.4. In the event that the Settlor or such Certificateholder wishes to apply for a refund of any such withholding tax, the Underlying Grantor Trust Trustee shall reasonably cooperate with the Settlor or such Certificateholder in making such claim so long as the Settlor or such Certificateholder agrees to reimburse the Underlying Grantor Trust Trustee for any reasonable out-of-pocket expenses incurred.

Each Certificateholder or holder of an interest in a Certificate, by acceptance of such Certificate or such interest therein, agrees to provide to the Underlying Grantor Trust Trustee, upon its request, information sufficient to eliminate the imposition of, or determine the amount of, any withholding or deduction pursuant to an agreement described in Section 1471(b) of the Internal Revenue Code or otherwise imposed pursuant to Sections 1471 through 1474 of the Internal Revenue Code (or any amended or successor version) and any current or future regulations or official interpretations thereof. In addition, each Certificateholder or holder of an interest in a Certificate, by acceptance of such Certificate or such interest therein, agrees that the Underlying Grantor Trust Trustee has the right to withhold any amounts (properly withholdable under law and without any corresponding gross-up) payable to a Certificateholder or holder of an interest in a Certificate that fails to comply with the requirements of the preceding sentence.

SECTION 4.5 Reliance on Instructions; No Segregation of Monies; No Interest. In making deposits to the Trust Account pursuant to this Agreement, the Underlying Grantor Trust Trustee shall be fully protected in relying upon the written instructions of the Administrator and shall have no duty to verify any calculations with respect thereto. Monies received by the Underlying Grantor Trust Trustee hereunder need not be segregated in any manner except as provided herein with respect to the deposit of such monies into the accounts created hereby, and to the extent required by law, and may be deposited under such general conditions as may be prescribed by law, and the Underlying Grantor Trust Trustee shall not be liable for any interest thereon.

## ARTICLE V - CONCERNING THE PORTFOLIO STUDENT LOANS.

SECTION 5.1 Enforcement of Portfolio Student Loans. The Settlor, on behalf of the Grantor Trust, shall (subject to any adjustments or waivers described in this Section 5.1) cause to be diligently enforced all terms, covenants and conditions of all Portfolio Student Loans (other

than Charged-Off Loans), including the payment of all principal and interest payments (as such payments may be adjusted to take into account the discount made available to borrowers who make payments on Portfolio Student Loans through automatic withdrawals, and any other reduction in the interest payable on Portfolio Student Loans provided for in any borrower incentive or other special program under which such Portfolio Student Loans were originated), and all other amounts due the Grantor Trust thereunder; *provided, that*, the Settlor may assign any of its duties under Sections 5.1 through 5.4 to the Administrator or the Master Servicer under the Administration Agreement or the Master Servicing Agreement, respectively.  Neither the Settlor nor the Underlying Grantor Trust Trustee shall permit the release of the obligations of any borrower under any Portfolio Student Loan (other than a Charged-Off Loan), and the Settlor and the Underlying Grantor Trust Trustee on behalf of the Grantor Trust shall at all times, to the extent permitted by law and at the direction of the Servicer, cause to be defended, enforced, preserved and protected the rights and privileges of the Grantor Trust and the Underlying Grantor Trust Trustee under or with respect to each Portfolio Student Loan (other than a Charged-Off Loan).  Neither the Settlor nor the Underlying Grantor Trust Trustee shall consent or agree to or permit any amendment or modification of any Portfolio Student Loan (other than a Charged-Off Loan) or agreement in connection therewith which will in any manner materially adversely affect the rights or security of any of the holders of the Securities; *provided*, that the Settlor may, and the Servicer is hereby authorized on behalf of the Grantor Trust to (a) grant forbearance or deferment on terms consistent with those generally offered to borrowers of private student loans, (b) settle a default or cure a delinquency on any Portfolio Student Loan or otherwise settle any dispute with a borrower on such terms as will be required by law or as the Servicer may deem to be in the best interest of the Grantor Trust and the holders of the Notes and of the Residual Certificates, (c) amend the terms of a Portfolio Student Loan to provide for a different rate of interest thereon to the extent required by law, (d) revise the repayment terms of a Portfolio Student Loan in accordance with any authorized repayment plan, (e) grant such relief to borrowers residing or attending school in federally-declared disaster areas as the Master Servicer may deem to be appropriate, (f) waive any late payment charge for any borrower, (g) apply any credit to the balance of a Portfolio Student Loan if an amount equal to the credit is deposited into the Collection Account by or at the direction of the Master Servicer as a payment of such Portfolio Student Loan.

SECTION 5.2 Administration and Collection of Portfolio Student Loans.  The Settlor, on behalf of the Grantor Trust, shall cause to be diligently enforced, and take all reasonable steps, actions and proceedings necessary for the enforcement of, the provisions in the Master Servicing Agreement requiring the Master Servicer to provide for the servicing of the Portfolio Student Loans by entering into one or more Servicing Agreements pursuant to which the Servicer agrees to service and collect all Portfolio Student Loans (other than Charged-Off Loans) in accordance with the requirements of this Agreement and the Master Servicing Agreement.  The Settlor and/or the Underlying Grantor Trust Trustee, on behalf of the Grantor Trust, shall, at the written direction of the Master Servicer and to the extent necessary to obtain rights to servicing of the Portfolio Student Loans, enter into one or more such Servicing Agreements.

The Settlor, on behalf of the Grantor Trust, shall cause to be diligently enforced, and take all reasonable steps, actions and proceedings necessary for the enforcement of, all terms, covenants and conditions of each Servicing Agreement and the Master Servicing Agreement, including the prompt payment of all principal and interest payments and all other amounts due

13

the Grantor Trust or the Underlying Grantor Trust Trustee thereunder. Neither the Settlor nor the Grantor Trust shall permit the release of the obligations of any Servicer under any Servicing Agreement or the Master Servicer under the Master Servicing Agreement and the Settlor, on behalf of the Grantor Trust, shall at all times, to the extent permitted by law, cause to be defended, enforced, preserved and protected the rights and privileges of the Grantor Trust and the Underlying Grantor Trust Trustee under or with respect to each Servicing Agreement. Neither the Settlor nor the Underlying Grantor Trust Trustee shall enter into, consent or agree to, nor shall the Settlor permit, any amendment or modification of any Servicing Agreement or the Master Servicing Agreement which will in any manner materially adversely affect the rights or security of any of the holders of the Securities. Notwithstanding the foregoing, the Settlor and/or the Underlying Grantor Trust Trustee may agree to amend any Servicing Agreement or the Master Servicing Agreement in any respect if the Approval Condition is met with respect to such amendment.

SECTION 5.3 Enforcement of Agreements. The Settlor, on behalf of the Grantor Trust, shall cause to be diligently enforced, and take all reasonable steps, actions and proceedings necessary for the enforcement of, all terms, covenants and conditions of the Purchaser Sale Agreement, and neither the Settlor nor the Grantor Trust shall permit the release of the obligations of the parties thereunder. The Settlor, on behalf of the Grantor Trust, shall at all times, to the extent permitted by law, cause to be defended, enforced, preserved and protected the rights and privileges of the Grantor Trust and the Underlying Grantor Trust Trustee under or with respect to the Purchaser Sale Agreement. Neither the Settlor nor the Underlying Grantor Trust Trustee shall enter into, consent or agree to, or permit any amendment or modification of the Purchaser Sale Agreement which will in any manner materially adversely affect the rights or security of any of the holders of the Securities. Notwithstanding the foregoing, the Settlor and/or the Underlying Grantor Trust Trustee may amend the Purchaser Sale Agreement in any respect if the Approval Condition is met with respect to such amendment.

SECTION 5.4 Change in Servicer, Master Servicer or Settlor. At the written direction of the Settlor, the Underlying Grantor Trust Trustee shall execute such agreements and other instruments (in form and substance satisfactory to the Underlying Grantor Trust Trustee) as may be necessary or desirable to effect a change to a successor Settlor, Master Servicer or Servicer in accordance with the Indenture, the Administration Agreement, the Master Servicing or the Servicing Agreement, as applicable.

SECTION 5.5 Representations and Warranties of the Settlor. By execution of this Agreement, the Settlor makes the following representations and warranties for the benefit of the Underlying Grantor Trust Trustee and the Certificateholders (which are made as of the date of this Agreement as shall survive the execution and delivery of this Agreement and the issuance of the Trust Certificate):

(a)     The Servicer (or other third party custodian) has in its possession all original copies of the promissory notes or loan agreements that constitute or evidence those Portfolio Student Loans evidenced by physical promissory notes or loan agreements. Such promissory notes or loan agreements do not have any marks or notations indicating that they have been pledged, assigned or otherwise conveyed to any Person.

14

(b)     The Grantor Trust is not registered nor required to be registered as an "investment company" under the Investment Company Act of 1940, as amended (the "Investment Company Act").  This treatment of the Grantor Trust relies, on a non-exclusive basis, on the exemption set forth in Rule 3a-7 promulgated under the Investment Company Act.  The Grantor Trust is not a "covered fund" for purposes of the "Volcker Rule," Section 619 of the Dodd-Frank Wall Street Reform and Consumer Protection Act.

(c)     As of the Date of Issuance, each of the Servicing Agreement and the Master Servicing Agreement is in full force and effect.

(d)     The Settlor represents and warrants (which representations and warranties are made with respect to the particular Portfolio Student Loans acquired by the Grantor Trust as of the date of acquisition thereof, survive the acquisition of the Portfolio Student Loans on such date, and may not be waived):

(i)     The Portfolio Student Loans constitute "promissory notes" or "payment intangibles" as defined in Article 9 of the UCC.

(ii)     Upon the acquisition thereof pursuant to this Agreement, the Underlying Grantor Trust Trustee on behalf of the Grantor Trust, will own and have good and marketable title to the Portfolio Student Loans free and clear of any lien, claim or encumbrance of any Person, other than pursuant to this Agreement and the Indenture.

(iii)     No consents are required by the terms of the Portfolio Student Loans to the acquisition of Portfolio Student Loans by the Underlying Grantor Trust Trustee on behalf of the Grantor Trust, pursuant to this Agreement.

(iv)     This Agreement creates a valid and continuing "security interest" (as defined in Article 9 of the UCC) in the Portfolio Student Loans sold pursuant thereto, in favor of the Underlying Grantor Trust Trustee on behalf of the Grantor Trust.

(v)     Within ten (10) days of the date of acquisition of Portfolio Student Loans, the Settlor has caused the filing, or will have caused the Administrator to file all appropriate financing statements in the proper filing office in the appropriate jurisdictions under applicable law in order to perfect the security interests in such Portfolio Student Loans granted to the Grantor Trust, acting by and through the Underlying Grantor Trust Trustee, under this Agreement.

(vi)     Other than pursuant to the Indenture, the Settlor has not pledged, assigned, sold, granted a security interest in, or otherwise conveyed any interest in the Portfolio Student Loans.  The Settlor has not authorized the filing of and is not aware of any financing statements against the Settlor that include a description of collateral covering the Portfolio Student Loans, other than any financing statement relating to the trust estate established under the Indenture. The Settlor is not aware of any judgment or tax lien filings against the Settlor.

(vii)     The Settlor hereby makes as of the date of the Citibank Sale Agreement each of the same representations made by Citibank regarding the Portfolio Student Loans.

15

SECTION 5.6 <u>Sponsor Advances; Limited Make Whole</u>.

(a)    In the event of a breach of any of the representations and warranties of the Settlor specified in Section 5.5 that materially and adversely affects a Portfolio Student Loan or the interest therein of the Underlying Grantor Trust Trustee on behalf of the Securityholders, to the extent (i) such breach is caused by a breach of any applicable representations and warranties of Citibank under the Citibank Sale Agreement and (ii) the Sponsor has received payment of a Limited Make Whole with respect to such Portfolio Student Loan, the Sponsor hereby agrees to remit to the Depositor (x) such Limited Make Whole and (y) an amount equal to 10% of the par amount of such Portfolio Student Loan (such <u>clause (y)</u>, the "<u>Sponsor Advance</u>"). The Depositor hereby assigns enforcement of its right to such amounts from the Sponsor to the Underlying Grantor Trust Trustee.

(b)    The parties hereto agree and acknowledge that the rights under the Limited Make Whole with respect to Citibank have been assigned from the Seller to the Sponsor, are available solely to the Sponsor and are not assignable to, or subject to exercise by, any other party, including any party to the Transaction Documents (other than the Sponsor) and any Holder, it being understood that no person (other than the Sponsor) shall have any right to pursue any remedy against Citibank or its affiliates, including without limitation, in connection with the Limited Make Whole.

## ARTICLE VI - AUTHORITY, DUTIES AND RESTRICTIONS OF UNDERLYING GRANTOR TRUST TRUSTEE.

SECTION 6.1 <u>General Authority</u>. The Underlying Grantor Trust Trustee is authorized and directed to execute and deliver the Transaction Documents to which the Grantor Trust or the Underlying Grantor Trust Trustee is named as a party and each certificate or other document attached as an exhibit to or contemplated by the Transaction Documents to which the Grantor Trust or the Underlying Grantor Trust Trustee is named as a party and any amendment thereto, in each case, in such form as the Settlor, in its capacities as Settlor and the Majority Certificateholders shall approve (and, with respect to any amendment as Settlor and Majority Certificateholders shall direct in writing). Any such execution and delivery is hereby ratified and confirmed in all respects and does not and will be deemed not to conflict with, constitute or result in a breach or violation of, or a default under, any provision of or any duty under this Agreement. In addition to the foregoing, the Underlying Grantor Trust Trustee is authorized to take all actions required of the Grantor Trust pursuant to the Transaction Documents, it being understood that such authorization shall not constitute a duty. The Underlying Grantor Trust Trustee is further authorized to take such action from time to time as the Majority Certificateholders directs in writing with respect to and in accordance with the Transaction Documents.

SECTION 6.2 <u>General Duties</u>. It shall be the duty of the Underlying Trustee to discharge (or cause to be discharged) all of its responsibilities pursuant to the terms of this Agreement and to administer the Grantor Trust in the best interests of the Certificateholder, in accordance with the provisions of this Agreement, and, to the fullest extent permitted by law, no implied duties (including fiduciary duties), liabilities or obligations otherwise existing at law or in equity with respect to the Grantor Trust, which implied duties and liabilities are hereby eliminated, shall be

722605837 14459646

read into this Agreement or any Transaction Document against the Underlying Trustee nor any of its officers, directors, employees, agents or affiliates. The Underlying Trustee agrees to perform its duties under this Agreement in good faith and in the best interests of the Certificateholder, but only upon the express terms of this Agreement. Every provision of this Agreement relating to the conduct or affecting the liability of or affording protection to the Underlying Trustee shall be subject to the provisions of this Article. The Underlying Trustee shall have no obligation or duty to monitor or perform the Grantor Trust's obligations and duties under the Transaction Documents or to ensure its compliance with the terms thereof.

In addition, the Underlying Trustee shall have no obligation to manage, make any payment in respect of, register, record, sell, dispose of or otherwise deal with the Trust property, or to otherwise take or refrain from taking any action under, or in connection with, any document contemplated hereby to which the Underlying Trustee or the Grantor Trust is a party, except as expressly provided by the terms of this Trust Agreement. Further, the Underlying Trustee shall have no obligation administer, service or collect the Financed Student Loans or to maintain, monitor or otherwise supervise the administration, servicing or collection of the Financed Student Loans or the performance of any other Person and shall have no liability for the failure of any other Person to perform its obligations or duties under the Transaction Documents or otherwise. The Underlying Trustee shall not be personally liable, answerable or accountable to any Person hereunder under any circumstances, except for its own willful misconduct or gross negligence in the performance of its express duties under this Agreement. In addition, and notwithstanding any other provision of this Agreement or the Transaction Documents:

(a)    the Underlying Grantor Trust Trustee shall not be liable for any error of judgment made by any of the officers or employees of the Underlying Grantor Trust Trustee in good faith;

(b)    the Underlying Grantor Trust Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction or instructions of the Settlor, the Majority Certificateholders, the Certificateholder or the Administrator;

(c)    no provision of this Agreement shall require the Underlying Grantor Trust Trustee to expend or risk funds or otherwise incur any financial liability in the performance of any of its rights or powers hereunder, if the Underlying Grantor Trust Trustee shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(d)    under no circumstances shall the Underlying Grantor Trust Trustee be liable for indebtedness of the Grantor Trust or otherwise evidenced by or arising under this Agreement;

(e)    the Underlying Grantor Trust Trustee shall not be responsible for or in respect of the validity or sufficiency of this Agreement or for the due execution hereof by the Settlor or for the form, character, genuineness, sufficiency, value or validity of any of the Trust Estate, other than (in the case of the Underlying Grantor Trust Trustee) the certificate of authentication on the Trust Certificate, and the Underlying Grantor Trust Trustee shall not in any event assume or incur any liability, duty, or obligation to any Certificateholder, other than as expressly provided for herein;

(f)    the Underlying Grantor Trust Trustee shall not be liable for the action or inaction, default or misconduct of the Settlor, the Certificateholder, the Majority Certificateholders, the Administrator, or the Indenture Trustee hereunder or otherwise;

(g)    the Underlying Grantor Trust Trustee shall not be under any obligation to exercise any of the rights or powers vested in it by this Agreement, or to institute, conduct or defend any litigation under this Agreement or otherwise or in relation to this Agreement, or honor the request, order or direction pursuant to this Agreement, unless the directing party has offered to the Underlying Grantor Trust Trustee security or indemnity satisfactory to it against the costs, expenses, disbursements, advances and liabilities that may be incurred by the Underlying Grantor Trust Trustee, its agents and its counsel therein or thereby.  The right of the Underlying Grantor Trust Trustee to perform any discretionary act enumerated in this Agreement shall not be construed as a duty, and the Underlying Grantor Trust Trustee shall not be answerable for other than its gross negligence or willful misconduct in the performance of any such act.

(h)    In no event shall the Underlying Grantor Trust Trustee be responsible or liable for special, indirect, punitive or consequential loss or damage of any kind whatsoever (including, but not limited to, loss of profit) irrespective of whether the Underlying Grantor Trust Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action;

(i)    In no event shall the Underlying Trustee be responsible or liable for any failure or delay in the performance of its obligations hereunder or for any losses of the Grantor Trust resulting from any event beyond the reasonable control of the Underlying Trustee, its agents or subcustodians arising out of or caused by, directly or indirectly, forces beyond its control, including, without limitation, nationalization, strikes, work stoppages, accidents, expropriation, devaluation, seizure or similar action by any governmental authority, de facto or de jure; or enactment, promulgation, imposition or enforcement by any such governmental authority of currency restrictions, exchange controls, levies or other charges affecting the Grantor Trust's property; acts of war or terrorism, civil or military disturbances, insurrection, revolution, nuclear or natural catastrophes or acts of God, and interruptions, loss or malfunctions of utilities, communications or computer (software and hardware) services; or any order or regulation of any banking or securities industry including changes in market rules and market conditions affecting the execution or settlement of transactions; or any similar event; it being understood that the Underlying Trustee shall use reasonable efforts which are consistent with accepted practices in the banking industry to resume performance as soon as practicable under the circumstances;

(j)    In the exercise or administration of the trusts hereunder and in the performance of its duties and obligations under this Agreement and the other Transaction Documents, the Underlying Grantor Trust Trustee may act directly or through agents, attorneys, custodian or nominee, and the Underlying Grantor Trust Trustee shall not be liable for the conduct or misconduct of such agents, attorneys, custodian or nominee if such agents, attorneys, custodian or nominee shall have been selected by the Underlying Grantor Trust Trustee in the exercise of reasonable care;

(k)    In the exercise or administration of the trusts hereunder and in the performance of its duties and obligations under this Agreement and the other Transaction Documents, the Underlying Grantor Trust Trustee may consult with counsel, accountants and other skilled

18

persons selected in the exercise of reasonable care and employed by it. The Underlying Grantor Trust Trustee shall not be liable for anything done, suffered or omitted by it in good faith reliance on the opinion or advice of any such counsel, accountants or other such persons;

(l)    Except for those actions that the Underlying Grantor Trust Trustee is required to take hereunder without written direction, the Underlying Grantor Trust Trustee shall not have any obligation or liability to take any action or to refrain from taking any action hereunder or under any Transaction Document that requires written direction in the absence of such written direction as provided hereunder regardless of the consequences of the failure to take such action;

(m)    Each of the parties hereto hereby agrees and, as evidenced by its acceptance of any benefits hereunder, the Certificateholder, the Settlor and the Administrator acknowledges and agrees that the Underlying Grantor Trust Trustee in any capacity (x) has not provided and will not provide in the future, any advice, counsel or opinion regarding the tax, regulatory, financial, investment, securities law or insurance implications and consequences of the formation, funding and ongoing administration of the Grantor Trust, including, but not limited to, income, gift and estate tax issues, insurable interest issues, risk retention issues, doing business or other licensing matters and the initial and ongoing selection and monitoring of financing arrangements, (y) has not made any investigation as to the accuracy of any representations, warranties or other obligations of the Grantor Trust under the Transaction Documents and shall have no liability in connection therewith and (z) has not prepared or verified, and shall not be responsible or liable for, any information, disclosure or other statement in any disclosure or offering document or in any other document issued or delivered in connection with the sale or transfer of the Trust Certificate;

(n)    All funds deposited with the Underlying Trustee hereunder may be held in a non-interest bearing trust account, and the Underlying Trustee shall not be liable for any interest thereon. Money held in trust by the Underlying Trustee need not be segregated from other funds except to the extent required by law or the terms of this Trust Agreement;

(o)    The Underlying Trustee shall not be required to provide, on its own behalf, any surety bond or other kind of security in connection with the execution of any of its trusts or powers under this Trust Agreement or any other Transaction Document or the performance of its duties hereunder;

(p)    The Underlying Trustee shall not be deemed to have knowledge or notice of any fact or event unless a Responsible Officer of the Underlying Trustee has actual knowledge thereof or unless written notice of such fact or event is received by a Responsible Officer and such notice references the fact or event;

(q)    Notwithstanding anything contained herein to the contrary, the Underlying Trustee shall not be required to take any action in any jurisdiction other than in the State of New York if the taking of such action will (i) require the registration with, licensing by or the taking of any other similar action in respect of, any state or other governmental authority or agency of any jurisdiction other than the State of New York by or with respect to the Underlying Trustee; (ii) result in any fee, tax or other governmental charge under the laws of any jurisdiction or any political subdivisions thereof in existence on the date hereof other than the State of New York

19

becoming payable by the Underlying Trustee; or (iii) subject the Underlying Trustee to personal jurisdiction in any jurisdiction other than the State of New York for causes of action arising from acts unrelated to the consummation of the transactions by the Underlying Trustee contemplated hereby.  The Underlying Trustee shall be entitled to obtain advice of counsel (which advice shall be an expense of the Grantor Trust) to determine whether any action required to be taken pursuant to the Trust Agreement results in the consequences described in clauses (i), (ii) and (iii) of the preceding sentence.  In the event that said counsel advises the Underlying Trustee that such action will result in such consequences, the Underlying Trustee may, or if instructed to do so by the Depositor, shall appoint an additional trustee pursuant to Section 9.6 hereof to proceed with such action;

(r)     To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. For a non-individual person such as a business entity, a charity, a trust or other legal entity, the Underlying Trustee may ask for documentation to verify its formation and existence as a legal entity. The Underlying Trustee may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation; and

(s)     It shall be the Administrator's duty and responsibility, and not the Underlying Trustee's duty or responsibility, to cause the Grantor Trust to respond to, defend, participate in or otherwise act in connection with any regulatory, administrative, governmental, investigative or other proceeding or inquiry relating in any way to the trust, its assets or the conduct of its business; provided, that, the Underlying Trustee hereby agrees to cooperate with the Administrator and to comply with any reasonable request made by the Administrator for the delivery of information or documents to the Administrator in the Underlying Trustee's actual possession relating to any such regulatory, administrative, governmental, investigative or other proceeding or inquiry.

SECTION 6.3 Action upon Instruction.

(a)     In accordance with the Transaction Documents, the Administrator shall, by written instruction, direct the Underlying Grantor Trust Trustee in the management and administration of the Grantor Trust.

(b)     Subject to Section 6.1, the Underlying Grantor Trust Trustee shall not be required to take any action hereunder or under any other Transaction Document if the Underlying Grantor Trust Trustee shall have reasonably determined or been advised by counsel that such action is likely to result in liability on the part of the Underlying Grantor Trust Trustee or is contrary to the terms hereof or of any other Transaction Document or is otherwise contrary to law.  In the absence of bad faith, the Trustee shall have no liability for following any such instructions.

(c)     Whenever the Underlying Trustee is unable to decide between alternative courses of action permitted or required by the terms of this Agreement or any other Transaction Document or is unsure as to the application of any provision of this Agreement or any other Transaction Document or any such provision is ambiguous as to its application, or is, or appears to be, in conflict with any other applicable provision, or in the event that this Agreement permits

any determination by the Underlying Trustee or is silent or is incomplete as to the course of action that the Underlying Trustee is required to take with respect to a particular set of facts, the Underlying Trustee shall promptly give notice (in such form as shall be appropriate under the circumstances) to the Certificateholder, Majority Certificateholder and Administrator requesting instruction as to the course of action to be adopted or application of such provision. Such instruction shall constitute full and complete authorization and protection for actions taken by the Underlying Trustee in reliance thereon, and to the extent the Underlying Trustee acts or refrains from acting in good faith in accordance with any written instruction of the Administrator, the Majority Certificateholder or the Certificateholder received, the Underlying Trustee shall not be liable on account of such action or inaction to any Person.  If the Underlying Trustee shall not have received appropriate instruction within ten days of such notice (or within such shorter period of time as reasonably may be specified in such notice or may be necessary under the circumstances) it may, but shall be under no duty to, take or refrain from taking such action, not inconsistent with this Agreement or the other Transaction Documents, as it shall deem to be in the best interests of the Settlor, and shall have no liability to any Person for such action or inaction. Each instruction delivered by the Certificateholder, Majority Certificateholder or Administrator shall certify to the Underlying Trustee that any actions to be taken pursuant to such instruction comply with the terms of this Agreement and do not violate or constitute a breach of any of the Transaction Documents, and the Underlying Trustee may rely on such certification and instruction without inquiry except to the extent it has actual knowledge to the contrary.

(d)     The Underlying Grantor Trust Trustee shall incur no liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper believed by it to be genuine and believed by it to be signed by the proper party or parties.  The Underlying Grantor Trust Trustee need not investigate any fact or matter stated in any such document, including verifying the correctness of any numbers or calculations.  The Underlying Grantor Trust Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect.  As to any fact or matter the method of determination of which is not specifically prescribed herein, the Underlying Grantor Trust Trustee may for all purposes hereof rely on a certificate, signed by the president or any vice president or by the treasurer or other authorized officers of the relevant party, as to such fact or matter, and such certificate shall constitute full protection to the Underlying Grantor Trust Trustee, for any action taken or omitted to be taken by it in good faith in reliance thereon.

SECTION 6.4 No Duties Except as Specified in this Agreement or in InstructionsThe Underlying Trustee shall not have any duty or obligation to manage, make any payment with respect to, register, record, sell, dispose of, or otherwise deal with the Trust Estate, or to otherwise take or refrain from taking any action under, or in connection with, any document contemplated hereby to which the Grantor Trust is a party, except as expressly provided by the terms of this Agreement or in any document or written instruction received by the Underlying Trustee pursuant to Section 6.3; and no implied duties (including fiduciary duties) or obligations shall be read into this Agreement or any other Transaction Document against the Underlying Trustee.  The Underlying Trustee shall have no responsibility for preparing or filing any tax filing (except as prepared by and in accordance with the direction of the Administrator),

722605837 14459646

qualification to do business, or preparing, filing or executing any securities law filing or report or any financing or continuation statement or amendment in any public office at any time or to otherwise perfect or maintain the perfection of any ownership or security interest or lien granted to it hereunder or to record this Agreement or any other Transaction Document or to monitor or enforce the satisfaction of any risk retention requirements.  BNY in its individual capacity nevertheless agrees that it will, at its own cost and expense, promptly take all action as may be necessary to discharge any Liens on any part of the Trust Estate that result from actions by, or claims against, BNY that are not related to the ownership or the administration of the Trust Estate.

SECTION 6.5 <u>No Action Except under Specified Documents or Instructions</u>.  The Underlying Grantor Trust Trustee shall not manage, control, use, sell, dispose of or otherwise deal with any part of the Trust Estate except (i) in accordance with the powers granted to and the authority conferred upon the Underlying Grantor Trust Trustee pursuant to this Agreement, (ii) in accordance with the other Transaction Documents or (iii) in accordance with any document or instruction delivered to the Underlying Grantor Trust Trustee pursuant to any provisions of this Agreement.

SECTION 6.6 <u>Restrictions</u>.  The Underlying Grantor Trust Trustee shall not take any action that is inconsistent with the purposes of the Grantor Trust set forth in <u>Section 2.3</u> unless otherwise permitted by the Transaction Documents.  None of the Certificateholder, the Majority Certificateholders the Settlor or the Administrator shall direct the Underlying Grantor Trust Trustee to take or refrain from taking any action if such action or inaction would be contrary to any obligation of the Grantor Trust or the Underlying Grantor Trust Trustee under this Agreement or any of the Transaction Documents or would be contrary to <u>Section 2.3</u>, or that otherwise would cause the Trust Estate or the Grantor Trust not to be treated as a "grantor trust" as provided in <u>Section 2.6</u>, nor shall the Underlying Grantor Trust Trustee be obligated to follow any such direction, if given.  Neither the Underlying Grantor Trust Trustee nor the Settlor shall take any action to:

(a)    merge or consolidate the Grantor Trust with or into any other entity, or convey or transfer all or substantially all of the Grantor Trust's assets to any other entity (other than a transfer of trust estate assets in trust to a successor Trustee hereunder); or

(b)    cause the Grantor Trust to incur, assume or guaranty any indebtedness other than as set forth in this Agreement or the other Transaction Documents.

SECTION 6.7 <u>Prior Consent of Majority Certificateholders with Respect to Certain Matters</u>.  With respect to the following matters, the Underlying Grantor Trust Trustee shall not take any of the following actions without the prior written consent or written direction, as applicable, (which consent or direction shall not be granted if it would cause an adverse effect on the Outstanding Notes or be contrary to or prohibited by any provision of any Transaction Document) of the Majority Certificateholders and the satisfaction of the Approval Condition unless otherwise permitted by the Transaction Documents:

(a)    the initiation of any material claim or lawsuit by the Grantor Trust and the compromise of any material action, claim or lawsuit brought by or against the Grantor Trust,

22

except for actions, claims or lawsuits brought to enforce the Portfolio Student Loans pursuant to written instruction from the Administrator in the ordinary course of business to which the Grantor Trust is a party;

(b)      the amendment, change, termination or modification of any Transaction Document to which the Grantor Trust is a party or the exercise of any voting, consent or control right under any Transaction Document to which the Grantor Trust is a party;

(c)      remove the Servicer under the Servicing Agreement or appoint a successor Servicer under the Servicing Agreement (each of which shall also require the consent of the Master Servicer);

(d)      remove the Master Servicer under the Master Servicing Agreement or appoint a successor Master Servicer under the Master Servicing Agreement;

(e)      remove the Administrator under the Administration Agreement or appoint a successor Administrator under the Administration Agreement;

(f)      except as expressly provided herein (including Section 4.3) or in the Transaction Documents, sell, transfer or otherwise encumber any of the Portfolio Student Loans;

(g)      except as provided in this Agreement, dissolve, terminate or liquidate the Grantor Trust in whole or in part;

(h)      perform any act that a Responsible Officer of the Underlying Grantor Trust Trustee actually knows would make it impossible to carry on the ordinary business of the Grantor Trust as described in this Agreement;

(i)      confess a judgment against the Grantor Trust;

(j)      commence a voluntary proceeding in bankruptcy relating to the Grantor Trust;

(k)      cause the Grantor Trust to lend any funds to any entity;

(l)      change the Grantor Trust's purpose and powers from those enumerated in this Agreement; or

(m)      possess Grantor Trust assets or assign the Grantor Trust's right to property for other than a Grantor Trust purpose.

## ARTICLE VII - COMPENSATION OF UNDERLYING GRANTOR TRUST TRUSTEE.

SECTION 7.1 The Underlying Grantor Trust Trustee's Fees and Expenses.  The Settlor agrees to pay to the Underlying Grantor Trust Trustee from time to time such compensation as the Settlor and the Underlying Grantor Trust Trustee shall from time to time agree in writing for all services rendered by it hereunder (which compensation shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust).  The Underlying Grantor Trust Trustee shall be entitled to payment and/or reimbursement by the Settlor for reasonable

23

expenses and all advances, legal fees and expenses of counsel and other experts, disbursements and other expenses reasonably made or incurred by it in and about the execution of the trusts created by this Agreement and in and about the exercise and performance of the powers and duties of the Underlying Grantor Trust Trustee and for the reasonable and necessary costs and expenses incurred in defending any liability in the premises of any character whatsoever (unless such liability is adjudicated by a court of competent jurisdiction in a final, non-appealable order to have resulted from the gross negligence or willful misconduct of the Underlying Grantor Trust Trustee in the performance of its express duties under this Agreement).

SECTION 7.2 Indemnification.  To the fullest extent permitted by applicable law, the Settlor shall indemnify the Underlying Grantor Trust Trustee (in its individual and trustee capacities) for, and hold the Underlying Grantor Trust Trustee and its officers, directors, employees and agents harmless against, any and all loss, action, suit, cost, damage, claims, liability or expense (including, but not limited to, fees and expenses of counsel and other experts and expenses in connection with enforcement of the Underlying Grantor Trust Trustee's rights hereunder) of any kind or nature whatsoever incurred by it in connection with the acceptance or administration of this Agreement and the performance of its duties hereunder.  The Settlor shall not be required to indemnify the Underlying Grantor Trust Trustee against any loss, damage, claim, liability or expense incurred by the Underlying Grantor Trust Trustee through the Underlying Grantor Trust Trustee's own gross negligence or willful misconduct, as determined by a court of competent jurisdiction in a final, non-appealable order.  The provisions of this Section 7.2 shall survive the termination of this Agreement or the earlier resignation or removal of the Underlying Grantor Trust Trustee.

## ARTICLE VIII - TERMINATION OF TRUST AGREEMENT.

SECTION 8.1 Termination of Trust Agreement.

(a)    The Grantor Trust shall dissolve upon the final distribution by the Underlying Grantor Trust Trustee of all monies or other property or proceeds of the Trust Estate in accordance with Section 4.4; *provided*, *however*, that in no event shall the Grantor Trust created by this Agreement continue beyond 110 years from the date of this Agreement.  To the extent permitted by applicable law, the bankruptcy, liquidation, or dissolution of the Settlor shall not (i) operate to terminate this Agreement or the Grantor Trust, nor (ii) otherwise affect the rights, obligations and liabilities of the parties hereto.

(b)    Except as provided in paragraph (a) the Settlor shall not be entitled to revoke or terminate the Grantor Trust or this Agreement.

(c)    Upon dissolution and completion of the winding up of the Grantor Trust, including the payment or making reasonable provision for payment of all obligations of the Grantor Trust this Agreement shall terminate.  The Settlor shall act as the liquidator of the Grantor Trust and shall be responsible for directing the Underlying Grantor Trust Trustee to take all required actions in connection with the winding up of the Grantor Trust.

## ARTICLE IX - SUCCESSOR UNDERLYING GRANTOR TRUST TRUSTEES AND ADDITIONAL TRUSTEES.

SECTION 9.1 <u>Resignation of the Underlying Grantor Trust Trustee</u>.  The Underlying Grantor Trust Trustee may at any time resign from the trusts and be discharged of the duties and obligations hereby created by giving thirty (30) days' written notice to the Settlor and the Administrator and such resignation shall take effect upon the appointment of a successor Underlying Grantor Trust Trustee by the Administrator or the Certificateholder, any such appointment being subject to the consent of the Majority Certificateholder and Rating Agency Notification.  No such resignation of the Underlying Grantor Trust Trustee shall become effective until the acceptance of appointment by a successor Underlying Grantor Trust Trustee under <u>Section 9.3</u> hereof.  Upon the appointment and acceptance of a successor Underlying Grantor Trust Trustee, (a) the Underlying Grantor Trust Trustee shall promptly cause written notice of such appointment to be given to the Settlor and the Indenture Trustee, which notice shall include the address of the Principal Office of such successor and (b) the Settlor and the Indenture Trustee shall acknowledge the replacement of the Underlying Grantor Trust Trustee as the case may be, by written instrument.  If an instrument of acceptance by a successor Underlying Grantor Trust Trustee shall not have been delivered to the resigning Underlying Grantor Trust Trustee within sixty (60) days after the giving of such notice of resignation, the resigning Underlying Grantor Trust Trustee may petition any court of competent jurisdiction for the appointment of a successor and the costs incurred in connection with any such petition (including, but not limited to, attorneys' fees and expenses) shall be payable by the Settlor.

SECTION 9.2 <u>Removal of the Underlying Grantor Trust Trustee</u>.  The Settlor may at any time with thirty (30) days' prior written notice, subject to the provisions of this <u>Article IX</u>, remove the Underlying Grantor Trust Trustee by written notice to the Underlying Grantor Trust Trustee, with the consent of the Majority Certificateholders and subject to Rating Agency Notification.  The Settlor shall, subject to Rating Agency Notification, remove the Underlying Grantor Trust Trustee if at any time so requested by an instrument or concurrent instruments in writing, filed with the Indenture Trustee and the Settlor, and signed by the Acting Holders and Majority Certificateholders.  Notwithstanding the foregoing, the Underlying Grantor Trust Trustee may not be removed during the existence of an Event of Default under the Indenture.

In case the Underlying Grantor Trust Trustee shall be dissolved, fail to comply with <u>Section 9.7</u> hereof or otherwise become incapable of acting hereunder, or in case it shall be taken under the control of any public officer or officers, or of a receiver appointed by a court, any holder of the Securities may petition any court of competent jurisdiction for the removal of the Underlying Grantor Trust Trustee and the appointment of a successor Underlying Grantor Trust Trustee.

No removal of the Underlying Grantor Trust Trustee, and no appointment of a successor Underlying Grantor Trust Trustee, pursuant to the provisions of this <u>Article IX</u> shall become effective until the acceptance of appointment by the successor Underlying Grantor Trust Trustee under <u>Section 9.3</u> hereof.

SECTION 9.3 <u>Appointment of a Successor Underlying Grantor Trust Trustee</u>.  Any successor Underlying Grantor Trust Trustee appointed pursuant to <u>Section 9.2</u> shall execute,

acknowledge and deliver to the Certificateholders and to its predecessor Underlying Grantor Trust Trustee an instrument accepting such appointment under this Agreement, and thereupon the resignation or removal of the predecessor Underlying Grantor Trust Trustee shall become effective and such successor Underlying Grantor Trust Trustee, without any further act, deed or conveyance, shall become fully vested with all the rights, powers, duties and obligations of its predecessor under this Agreement, with like effect as if originally named as the Underlying Grantor Trust Trustee. The predecessor Underlying Grantor Trust Trustee shall, upon payment of its fees and expenses, deliver to the successor Underlying Grantor Trust Trustee all documents and statements and monies (including, without limitation, the Trust Account) held by it under this Agreement; and the predecessor Underlying Grantor Trust Trustee shall execute and deliver such instruments and do such other things as may reasonably be required for fully and certainly vesting and confirming in the successor Underlying Grantor Trust Trustee all such rights, powers, duties and obligations.

No successor Underlying Grantor Trust Trustee shall accept appointment as provided in this Section 9.3 unless at the time of such acceptance such successor Underlying Grantor Trust Trustee shall be eligible pursuant to Section 9.7.

Upon acceptance of appointment (or cause to be mailed) by a successor Underlying Grantor Trust Trustee pursuant to this Section, the successor Underlying Grantor Trust Trustee shall mail notice of the succession to the Settlor and the Rating Agency.

SECTION 9.4 Successor Underlying Grantor Trust Trustee. Any corporation, association or agency into which the Underlying Grantor Trust Trustee may be converted or merged, or with which it may be consolidated, or to which it may sell or transfer its trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any such conversion, sale, merger, consolidation or transfer to which it is a party, ipso facto, shall be and become successor Underlying Grantor Trust Trustee hereunder and vested with all of the trusts, powers, discretions, immunities, privileges and all other matters as was its predecessor, without the execution, delivery or filing of any paper or instrument or any further act, deed or conveyance on the part of any of the parties hereto, anything herein to the contrary notwithstanding; provided that no such merger, conversion or consolidation shall relieve the Underlying Grantor Trust Trustee of its obligation to comply with Section 9.7 hereof.

SECTION 9.5 Accounts. In the event of a change in the office of Underlying Grantor Trust Trustee, the predecessor Underlying Grantor Trust Trustee which has resigned or been removed shall cease to be custodian of the Trust Account, and the successor Underlying Grantor Trust Trustee shall be and become such custodian.

SECTION 9.6 Appointment of Co-Trustee or Separate Trustee. At any time or times, for the purpose of meeting any legal requirements of any state in which the Underlying Grantor Trust Trustee determines it necessary to take any action hereunder, the Underlying Grantor Trust Trustee shall have power to appoint, and, upon the request of the Underlying Grantor Trust Trustee, the Settlor shall for such purpose join with the Underlying Grantor Trust Trustee in the execution, delivery and performance of all instruments and agreements necessary or proper to appoint one or more Persons approved by the Underlying Grantor Trust Trustee either to act as co-trustee or co-trustees, jointly with the Underlying Grantor Trust Trustee of all or any part of

722605837 14459646

the trust estate, or to act as separate trustee or separate trustees of all or any part of the trust estate, and to vest in such person or persons, in such capacity, such title to the trust estate or any part thereof, and such rights, powers, duties, trusts or obligations as the Underlying Grantor Trust Trustee may consider necessary or desirable, subject to the remaining provisions of this Section 9.6. No co-trustee or separate trustee hereunder shall be required to meet the terms of eligibility as a successor Underlying Grantor Trust Trustee under Section 9.7 hereof.

If the Settlor shall not have joined in such appointment within fifteen days after the receipt by it of a request so to do, or in case an Event of Default shall have occurred under the Indenture and be continuing, the Underlying Grantor Trust Trustee alone shall have power to make such appointment.

The Settlor shall execute, acknowledge and deliver all such instruments as may be required by any such co-trustee or separate trustee.

Every co-trustee or separate trustee shall, to the extent permitted by law but to such extent only, be appointed subject to the following terms, namely:

(a)     The Trust Certificate shall be authenticated and delivered, and all rights, powers, trusts, duties and obligations by this Agreement conferred upon the Underlying Grantor Trust Trustee in respect of the custody, control and management of moneys, papers, securities and other personal property shall be exercised, solely by the Underlying Grantor Trust Trustee.

(b)     All rights, powers, trusts, duties and obligations conferred or imposed upon the Underlying Grantor Trust Trustee shall be conferred or imposed upon and exercised and performed by the Underlying Grantor Trust Trustee, or by the Underlying Grantor Trust Trustee and such co-trustee or co-trustees or separate trustee or separate trustees jointly, as shall be provided in the instrument appointing such co-trustee or co-trustees or separate trustee or separate trustees, except to the extent that, under the law of any jurisdiction in which any particular act or acts are to be performed, the Underlying Grantor Trust Trustee shall be incompetent or unqualified to perform such act or acts, in which event such act or acts shall be performed by such co-trustee or co-trustees or separate trustee or separate trustees.

(c)     Any request in writing by the Underlying Grantor Trust Trustee to any co-trustee or separate trustee to take or to refrain from taking any action hereunder shall be sufficient warrant for the taking, or the refraining from taking, of such action by such co-trustee or separate trustee.

(d)     Any co-trustee or separate trustee may delegate to the Underlying Grantor Trust Trustee the exercise of any right, power, trust, duty or obligations, discretionary or otherwise.

(e)     The Underlying Grantor Trust Trustee at any time, by any instrument in writing, may accept the resignation of or remove any co-trustee or separate trustee appointed under this Section 9.6. Upon the request of the Underlying Grantor Trust Trustee, the Settlor shall join with the Underlying Grantor Trust Trustee in the execution, delivery and performance of all instruments and agreements necessary or proper to effectuate such resignation or removal.

(f)     No trustee hereunder shall be personally liable by reason of any act or omission of any other trustee hereunder.

(g)     Any demand, request, direction, appointment, removal, notice, consent, waiver or other action in writing delivered to the Underlying Grantor Trust Trustee shall be deemed to have been delivered to each such co-trustee or separate trustee.

(h)     Any moneys, papers, securities or other items of personal property received by any such co-trustee or separate trustee hereunder shall forthwith, so far as may be permitted by law, be turned over to the Underlying Grantor Trust Trustee.

Upon the acceptance in writing of such appointment by any such co-trustee or separate trustee, he, she, or it shall be vested with such title to the trust estate or any part thereof, and with such rights, powers, duties or obligations, as shall be specified in the instrument of appointment jointly with the Underlying Grantor Trust Trustee (except insofar as local law makes it necessary for any such co-trustee or separate trustee to act alone) subject to all the terms of this Agreement. Every such acceptance shall be filed with the Underlying Grantor Trust Trustee.  Any co-trustee or separate trustee may, at any time by an instrument in writing, constitute the Underlying Grantor Trust Trustee, his, her or its attorney-in-fact and agent, with full power and authority to do all acts and things and to exercise all discretion on his, her or its behalf and in his, her or its name.

In case any co-trustee or separate trustee shall die, become incapable of acting, resign or be removed, the title to the trust estate, and all rights, powers, trusts, duties and obligations of said co-trustee or separate trustee shall, so far as permitted by law, vest in and be exercised by the Underlying Grantor Trust Trustee unless and until a successor co-trustee or separate trustee shall be appointed in the manner herein provided.

SECTION 9.7 Corporate Trustee Required; Eligibility; Disqualification.  There shall at all times be a Underlying Grantor Trust Trustee hereunder which shall be a corporation or banking association organized and doing business under the laws of the United States of America or of any state, authorized under such laws to exercise corporate trust powers, having a combined capital stock, capital surplus and undivided profits of at least $25,000,000, subject to supervision or examination by a federal or state authority.  If such corporation or banking association publishes reports of condition at least annually, pursuant to law or to the requirements of the aforesaid supervising or examining authority, then for the purposes of this Section 9.7, the combined capital stock, capital surplus and undivided profits of such corporation or banking association shall be deemed to be its combined capital stock, capital surplus and undivided profits as set forth in its most recent report of condition so published.

## ARTICLE X - MISCELLANEOUS.

SECTION 10.1          Supplements and Amendments.

(a)     This Agreement may be amended from time to time by the Settlor, the Administrator and the Underlying Grantor Trust Trustee, with the prior written consent of the Certificateholder and the Majority Certificateholders, provided, that no amendment (i) that adversely affects the holders of the Securities shall be entered into except upon the satisfaction of

the Approval Condition, (ii) shall cause an Adverse Grantor Trust Event with respect to the Grantor Trust, and (iii) shall result in a "significant modification" of any Note within the meaning of Treasury Regulation section 1.1001-3.

(b)     It shall not be necessary for the consent of the Majority Certificateholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent, where required, shall approve the substance thereof. The manner of obtaining such consents (and any other consents of the Majority Certificateholders provided for in this Agreement) and of evidencing the authorization of the execution thereof by the Majority Certificateholders shall be subject to such reasonable requirements as the Underlying Grantor Trust Trustee may prescribe.

(c)     No amendment of this Trust Agreement which affects the rights, duties, liabilities, indemnities  or immunities of the Underlying Trustee, shall be effective without, in each specific instance, the prior written approval of the Underlying Trustee. Notwithstanding anything contained herein to the contrary, with respect to any proposed amendment, the Underlying Trustee shall not have any obligation to determine whether any such proposed amendment materially and adversely affects any Certificateholder, which determination shall be made by the Administrator with written notification thereof to the Underlying Trustee.

(d)     Prior to the execution of any amendment to this Agreement (or the Certificate of Trust or the Trust Certificate) the Underlying Grantor Trust Trustee shall receive and rely upon an Officer's Certificate and an Opinion of Counsel stating that the execution of such amendment is authorized or permitted by this Agreement and that all conditions precedent to the execution and delivery of such amendment have been satisfied.  The Underlying Grantor Trust Trustee may, but shall not be obligated to, enter into any such amendment which affects the Underlying Grantor Trust Trustee's own rights, duties or immunities under this Agreement or otherwise.

SECTION 10.2     No Legal Title to Trust Estate in Certificateholder.  The Certificateholder shall not have legal title to any part of the Trust Estate.  The Certificateholder shall be entitled to receive distributions with respect to its beneficial interest therein only in accordance with Articles IV and VIII.  No transfer, by operation of law or otherwise, of any right, title or interest of the Certificateholder to and in its beneficial interest in the Trust Estate shall operate to terminate this Agreement or the trusts hereunder or entitle any transferee to an accounting or to the transfer to it of legal title to any part of the Trust Estate.

SECTION 10.3     Limitations on Rights of Others.  The provisions of this Agreement are solely for the benefit of the Underlying Grantor Trust Trustee, the Grantor Trust, the Settlor, the Administrator and the Certificateholder, and to the extent expressly provided herein, the Indenture Trustee, and the holders of the Securities, and nothing in this Agreement, whether express or implied, shall be construed to give to any other Person any legal or equitable right, remedy or claim in the Trust Estate or under or in respect of this Agreement or any covenants, conditions or provisions contained herein.

SECTION 10.4     Notices.

(a)     Unless otherwise expressly specified or permitted by the terms hereof, all notices shall be in writing and shall be deemed given by telecopy with receipt acknowledged by the recipient thereof or upon receipt personally delivered, delivered by overnight courier or mailed certified mail, return receipt requested,

if to the Underlying Grantor Trust Trustee, addressed to:

> The Bank of New York Mellon Trust Company, N.A., as Underlying Grantor Trust Trustee
> 2001 Bryan Street, Suite 1000
> Dallas, TX 75201

if to the Indenture Trustee, addressed to:

> The Bank of New York Mellon Trust Company, N.A., as Underlying Grantor Trust Trustee
> 2001 Bryan Street, Suite 1000
> Dallas, TX 75201
> Attention: Corporate Trust Department

if to the Settlor, addressed to:

> GS2 Depositor 2016-A SPV, LLC
> c/o Goal Structured Solutions, Inc.
> 402 West Broadway, Suite 2000
> San Diego, CA 92101
> Email: tfleming@goalsolutions.com

(b)     Any notice required or permitted to be given to the Certificateholder and the Majority Certificateholders shall be given by first-class mail, postage prepaid, at the address of such Certificateholder or Majority Certificateholders, as applicable, as shown in the Trust Certificate Register.  Any notice so mailed within the time prescribed in this Agreement shall be conclusively presumed to have been duly given, whether or not the Certificateholder or Majority Certificateholders, as applicable, receives such notice.

SECTION 10.5     Severability.  Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

SECTION 10.6     Separate Counterparts.

(a)     The words "delivery," "execute," "execution," "signed," "signature," and words of like import in any document executed in connection herewith shall be deemed to include electronic signatures, the electronic matching of assignment terms and contract formations on

electronic platforms, or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature, physical delivery thereof or the use of a paper-based recordkeeping system, as the case may be, to the extent and as provided for in any applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, or any other similar state laws based on the Uniform Electronic Transactions Act; *provided*, *that*, notwithstanding anything contained herein to the contrary, the parties hereto are under no obligation to agree to accept electronic signatures in any form or in any format unless expressly agreed to by the parties hereto pursuant to procedures approved by the parties hereto; *provided*, *further*, *that*, without limiting the foregoing, upon the request of either party hereto, any electronic signature shall be promptly followed by such manually executed counterpart.

(b)     This Agreement may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. This Agreement shall become effective when it shall have been executed by the parties hereto and when the parties hereto shall have received counterparts hereof that, when taken together, bear the signatures of each of the other parties hereto. Delivery of an executed counterpart of a signature page of this Agreement by fax transmission or e-mail transmission (e.g. "pdf" or "tif") shall be effective as delivery of a manually executed counterpart of this Agreement. Without limiting the foregoing, to the extent a manually executed counterpart is not specifically required to be delivered under the terms of this Agreement, upon the request of any party, such fax transmission or e-mail transmission shall be promptly followed by such manually executed counterpart.

SECTION 10.7     Successors and Assigns.  All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Settlor, the Administrator, the Underlying Grantor Trust Trustee and their respective successors, and each Certificateholder and its successors and permitted assigns, all as herein provided.  Any request, notice, direction, consent, waiver or other instrument or action by a Certificateholder or the Majority Certificateholders shall bind the successors and assigns of such Certificateholder or Majority Certificateholders, as applicable.

SECTION 10.8     No Petition.  To the fullest extent permitted by applicable law, BNY (both in its individual capacity and as the Underlying Trustee) and the Administrator, by entering into this Agreement, and the Certificateholder, by accepting a Trust Certificate, hereby covenants and agrees, to the fullest extent permitted by applicable law, that they will not within one year and one day after the termination of the Grantor Trust institute against the Settlor, or solicit or join in or cooperate with or encourage any institution against the Settlor of, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under any United States Federal or state bankruptcy or similar law in connection with any obligations relating to the Trust Certificate, this Agreement or any of the other Transaction Documents; *provided*, *however*, that nothing in this Section shall preclude, or be deemed to stop, the Underlying Trustee (i) from taking any action prior to the expiration of the aforementioned period in (A) any case or proceeding voluntarily filed or commenced by the Grantor Trust or (B) any involuntary insolvency proceeding filed or commenced by a Person other than the Underlying Trustee, or (ii) from commencing against the Grantor Trust or any of

31

its property any legal action which is not a bankruptcy, reorganization, arrangement, insolvency, moratorium or liquidation proceeding.

SECTION 10.9      No Recourse.  Each Certificateholder, by accepting a Trust Certificate acknowledges that its Trust Certificate represents beneficial interests in the Grantor Trust only and does not represent interests in or obligations of Goal Structured Solutions Trust 2016-A, the Underlying Grantor Trust Trustee or any Affiliate thereof and no recourse may be had against such parties or their assets, except as expressly set forth or contemplated in this Agreement, the Trust Certificate or the other Transaction Documents; *provided*, *however*, nothing in this Section shall preclude the Underlying Grantor Trust Trustee from (i) taking any action prior to the expiration of the aforementioned period in (A) any case or proceeding voluntarily filed or commenced by the Settlor or (B) any involuntary insolvency proceeding filed or commenced by a Person other than the Underlying Grantor Trust Trustee, or (ii) commencing against the Settlor or any of its property any legal action which is not a bankruptcy, reorganization, arrangement, insolvency, moratorium or liquidation proceeding.

SECTION 10.10      Headings.  The headings of the various Articles and Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

SECTION 10.11      Governing Law.  This Agreement and all amendments hereto,  the rights of all parties hereto and the effect of every provision hereof shall be governed by and be construed in accordance with the laws of the State of New York without giving effect to the conflict-of-laws principles thereof (other than Sections 5-1401 and 5-1402 of the General Obligations Law).  Each of the parties hereto hereby irrevocably and unconditionally agrees (i) that it is and shall continue to be subject to the jurisdiction of the courts of the State of New York and of the federal courts sitting in the State of New York, and (ii)(A) to the extent that such party is not otherwise subject to service of process in the State of New York, to appoint and maintain an agent in the State of New York as such party's agent for acceptance of legal process and notify the other parties hereto of the name and address of such agent, and (B) to the fullest extent permitted by law, that service of process may also be made on such party by prepaid certified mail with a proof of mailing receipt validated by the U.S. Postal Service constituting evidence of valid service, and that, to the fullest extent permitted by applicable law, service made pursuant to (ii)(A) or (B) above shall have the same legal force and effect as if served upon such party personally within the State of New York.  For purposes of implementing the parties' agreement to appoint and maintain an agent for service of process in the State of New York, each such party that has not as of the date hereof already duly appointed such an agent does hereby appoint the party identified in Section 2.2 hereof as such agent.

SECTION 10.12      Administrator.  The Administrator agrees to perform its duties and obligations as provided in this Agreement, in accordance with the terms and provisions of the Administration Agreement.  The performance of the duties and obligations of the Administrator hereunder is subject to the terms and conditions of the Administration Agreement.

SECTION 10.13      Waiver of Jury Trial.  EACH OF THE SETTLOR, THE ADMINISTRATOR AND THE UNDERLYING GRANTOR TRUST TRUSTEE HEREBY IRREVOCABLY WAIVES, AND EACH CERTIFICATEHOLDER BY ITS ACCEPTANCE

32

OF THE TRUST CERTIFICATE SHALL BE DEEMED TO HAVE IRREVOCABLY WAIVED, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE SECURITIES, OR THE TRANSACTION CONTEMPLATED HEREBY.

SECTION 10.14    Not Acting in Individual Capacity.  Except as expressly provided herein, in accepting the trusts hereby created, BNY is acting solely as Underlying Grantor Trust Trustee hereunder and not in its individual capacity and all Persons having any claim against the Underlying Grantor Trust Trustee by reason of the transactions contemplated by this Agreement shall look only to the Trust Estate for payment or satisfaction thereof.  Under no circumstances shall the Underlying Trustee be personally liable for any representation, warranty, covenant obligation or indebtedness of the Grantor Trust.

SECTION 10.15    Underlying Grantor Trust Trustee Not Liable for Trust Certificate. The recitals contained herein and in the Trust Certificate (other than the signature of and authentication by the Underlying Grantor Trust Trustee on the Trust Certificate) shall be taken as the statements of the Settlor and the Underlying Grantor Trust Trustee assumes no responsibility for the correctness thereof.  The Underlying Grantor Trust Trustee makes no representations as to the validity or sufficiency of this Agreement or the Trust Certificate (other than the signature of and authentication by the Underlying Grantor Trust Trustee on the Trust Certificate), or related documents.  The Underlying Grantor Trust Trustee shall not at any time have any responsibility for or with respect to the legality, validity and enforceability of the Trust Certificate, or for or with respect to the sufficiency of the Trust Estate or its ability to generate the payments to be distributed to the holders of the Trust Certificate under this Agreement.

SECTION 10.16    Multiple Roles.  It is expressly acknowledge, agreed and consented to that BNY will be acting in the capacities of Underlying Trustee, Certificate Registrar, Indenture Trustee, Paying Agent and Securities Registrar.  BNY may, in such multiple capacities, discharge its separate functions fully, without hindrance or regard to conflict of interest principles, duty of loyalty principles or other breach of fiduciary duties to the extent that any such conflict or breach arises from the performance by BNY of express duties set forth in the Trust Agreement or the Indenture in any of such capacities, all of which defenses, claims or assertions are hereby expressly waived by the Settlor, the Certificateholders and any other person having rights pursuant hereto or thereto.

*[Signatures begin on the next page]*

33

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the day and year first above written.

THE BANK OF NEW YORK MELLON
TRUST COMPANY, N.A.,
as Underlying Grantor Trust Trustee

By: _____

Name: Mitchell L. Brumwell
Title:  Vice President

[*Signatures continue on the next page*]

*Underlying Grantor Trust Agreement*

**GS2 DEPOSITOR 2016-A SPV, LLC**,
as Settlor

By: _____
      Name:  Kenneth L. Ruggiero
      Title:   President

[*Signatures continue on the next page*]

*Underlying Grantor Trust Agreement*

**GOAL STRUCTURED SOLUTIONS, INC.**,
as Administrator and, solely as to <u>Section 5.6</u>
hereof, the Sponsor

By: _____
     Name:  Kenneth L. Ruggiero
     Title:    President and Chief Executive Officer

[*End of signatures*]

*Underlying Grantor Trust Agreement*

EXHIBIT A

**FORM OF TRUST CERTIFICATE**

NUMBER R-_

GS2 GRANTOR TRUST 2016-A

CERTIFICATE

Percentage interest in Trust Estate evidenced by this Certificate:     100%

Evidencing a beneficial interest in the assets of GS2 Grantor Trust 2016-A, a New York common law trust (the "Grantor Trust"), entitling the holder to certain distributions of the Grantor Trust, as defined below, the property of which includes a pool of private student loans sold to the Underlying Grantor Trust Trustee (as defined below) on behalf of the Grantor Trust by GS2 Depositor 2016-A SPV, LLC, a Delaware limited liability company (the "Settlor"), pursuant to the Grantor Trust Agreement (as defined below).

THIS TRUST CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OR ANY OTHER APPLICABLE SECURITIES OR "BLUE SKY" LAWS OF ANY STATE OR OTHER JURISDICTION, AND MAY NOT BE RESOLD, ASSIGNED, PLEDGED OR OTHERWISE TRANSFERRED EXCEPT IN COMPLIANCE WITH THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT OR ANY OTHER APPLICABLE SECURITIES OR "BLUE SKY" LAWS, PURSUANT TO AN EXEMPTION THEREFROM OR IN A TRANSACTION NOT SUBJECT THERETO.  THE HOLDER OF THIS TRUST CERTIFICATE AGREES, ON ITS OWN BEHALF AND ON BEHALF OF ANY ACCOUNTS FOR WHICH IT IS ACTING AS AGENT, THAT (1) SUCH TRUST CERTIFICATE MAY NOT BE RESOLD, ASSIGNED, PLEDGED OR TRANSFERRED EXCEPT IN ACCORDANCE WITH A MERGER, CONSOLIDATION OR OTHER SALE IN ACCORDANCE WITH SECTION 5.7 OF THE INDENTURE.

THIS CERTIFIES THAT GOAL STRUCTURED SOLUTIONS TRUST 2016-A (the "Certificateholder"), a Delaware statutory trust, as designated transferee of GS Depositor 2016-A SPV, LLC, a Delaware limited liability company (the "Settlor"), is the registered owner of the Trust Certificate that is a nonassessable, fully-paid, beneficial interest in the assets of the Grantor Trust, entitling it to certain distributions of the Grantor Trust.

The Grantor Trust was created pursuant to a Trust Agreement dated as of the Closing Date (the "Grantor Trust Agreement"), among the Settlor, Goal Structured Solutions, Inc. and The Bank of New York Mellon Trust Company, N.A., as Underlying Grantor Trust Trustee (the "Underlying Grantor Trust Trustee").

This Trust Certificate is the sole duly authorized certificate designated as GS2 Grantor Trust 2016-A Trust Certificate (herein called the "Trust Certificate").  This Trust Certificate is issued under and is subject to the terms, provisions and conditions of the Grantor Trust Agreement, to which Grantor Trust Agreement the Certificateholder by virtue of the acceptance hereof assents and by which such Certificateholder is bound.

A-1

"Certificateholder" means the registered owner of this Certificate and its registered assigns.

Under the Grantor Trust Agreement, there will be distributed on each Monthly Payment Date to or for the account of the Certificateholder, the "Trust Certificate Distribution Amounts" as defined in the Grantor Trust Agreement.

It is the intent of the Sponsor, the Underlying Grantor Trust Trustee and the Certificateholder that, for purposes of federal income taxes, and to the extent permitted by law, for purposes of applicable state income or franchise tax, the Grantor Trust will be treated as a grantor trust for federal income tax purposes. The Certificateholder, by acceptance of a Trust Certificate, agrees to treat, and to take no action inconsistent with the treatment of, the Grantor Trust and the Trust Certificate for such tax purposes as just described.

The Certificateholder by accepting this Trust Certificate acknowledges that the Certificateholder's Trust Certificate represents beneficial interests in the Grantor Trust only and does not represent interests in or obligations of Goal Structured Solutions, Inc., the Settlor, the Underlying Grantor Trust Trustee or any affiliate thereof and no recourse may be had against such parties or their assets, except as expressly set forth or contemplated in the Grantor Trust Agreement, this Trust Certificate or the other Transaction Documents.

Unless the certificate of authentication hereon shall have been executed by an authorized officer of the Underlying Grantor Trust Trustee, by manual signature, this Trust Certificate shall not entitle the Certificateholder hereof to any benefit under the Grantor Trust Agreement or be valid for any purpose.

THIS TRUST CERTIFICATE SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

722605837 14459646

**IN WITNESS WHEREOF**, the Underlying Grantor Trust Trustee, on behalf of the Grantor Trust and not in its individual capacity, has caused this Trust Certificate to be duly executed.

**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,**
not in its individual capacity but solely as Underlying Grantor Trust Trustee of **GS2 GRANTOR TRUST 2016-A**

By: _____

A-3

Dated: _____, 20__

TRUSTEE'S CERTIFICATE OF AUTHENTICATION

This is one of the Trust Certificates referred to in the within-mentioned Grantor Trust Agreement.

**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.**, not in its individual capacity but solely as Underlying Grantor Trust Trustee

By: _____

Dated: _____, 20__

A-4

## ASSIGNMENT

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto

_____

(Please print or type name and address, including postal zip code, of assignee)

_____

the within Trust Certificate, and all rights thereunder, hereby irrevocably constituting and appointing

_____ Attorney to

transfer said Trust Certificate on the books of the Trust Certificate Registrar, with full power of substitution in the premises.

Dated:_____        _____

A-5