IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| Yolande E Essangui | * | Case No. 16-12984 |
| Debtor | | |
| * * * * * * * * * * * * | | |
| Yolande E Essangui | * | |
| Plaintiff | * | Adv. No. 16-00201 |
| v. | * | |
| Firstmark Services, et al. | * | |
| Defendants. | * | |
| * * * * * * * * * * * * | | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Yolande E Essangui, by and through her undersigned attorney, hereby moves for summary judgment in this adversary proceeding against defendant GS2 Grantor Trust 2016-A, assignee of SLF V-2015 Trust ("Defendant"). This Motion is based upon the Affidavit of Yolande E. Essangui, exhibits produced in discovery, documents received by subpoena from DeVry Education Group (the "DeVry Response"), documents within the public record and the pleadings and other papers on file with this Court.

**INTRODUCTION**

This adversary proceeding concerns the prospective dischargeability of a private student loan. The disposition of this proceeding turns on (1) whether the private student loan is an "educational benefit" within the meaning of 11 U.S.C. §523(a)(8)(A)(ii) and (2) whether the Medical Education Review Program ("MERP") that Plaintiff financed through funds advanced by Defendant's predecessor is an

1

"eligible educational institution" as that term is defined under section 481 of the Higher Education Act of 1965 (20 U.S.C. 1088), and eligible to participate in a program under title IV of the Higher Education Act.

## PROCEDURAL HISTORY

Plaintiff initiated this Chapter 7 case on March 8, 2016 and initiated this adversary proceeding on April 21, 2016. Although several other defendants were named in the Complaint, only Defendant remains.

Defendant was initially sued as "Firstmark Services SLF V 2015 Trust" and the claim against Defendant was included within the First Claim for Relief. Pursuant to such claim for relief, the Plaintiff sought to determine that the loan asserted by Defendant was not a student loan within the meaning of Section 523(a)(8) of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq. See* Debtor's Amended Complaint To Determine Private Student Loan Dischargeable As Not A Qualified Education Loan Covered By 11 U.S.C. § 523(A)(8), Dkt. No. 5. Defendant filed an Answer to the Complaint, Dkt. No. 11.

Both parties participated in pretrial discovery, propounding interrogatories, requests for admission and requests for production of documents. In addition Defendant obtained documents by subpoena from DeVry Education Group.

## STATEMENT OF UNDISPUTED FACTS

1.  Plaintiff is an individual who is a resident of the State of Maryland. Affidavit of Yolande Essangui ("Essangui Affidavit"), paragraph 2.

2.  Prior to March, 2008 Plaintiff decided she wanted to pursue a medical career. She identified Ross University Medical School ("Ross") as an institution that she may wish to attend for that purpose. Essangui Affidavit, paragraph 3.

2

3. Unable to obtain direct admission into Ross, Plaintiff enrolled in the MERP, a preparatory course of instruction the completion of which enabled Plaintiff to enroll in Ross for her medical studies. Essangui Affidavit, paragraph 4.

4. MERP is only available to students who have obtained conditional acceptance to Ross or the American University of the Caribbean School of Medicine ("AUC"), but MERP is a separate institution, containing its own administration, instructors and staff. DeVry Response (Exhibit "A" hereto), page 7.

5. MERP is not qualified as a Title IV institution and federal aid, grants or loans are not available to students attending MERP. AUC Financial Aid Planning Guide, Exhibit B to Essangui Affidavit, page 2.

6. MERP does not offer a credential upon completion nor a transcript reflecting a student's status relative to coursework taken in MERP. MERP website.

7. MERP is a program designed and offered by Dominica Management, Inc. in cooperation with the Faculty of the Ross University School of Medicine. MERP is a rigorous one semester (15 credit - equivalent) program designed to provide preparatory basic sciences course content typically offered during the four semesters of the Basic Medical Sciences Program (BMSP) on Dominica. The selected courses integrate and articulate with coursework and content offered in the 1st, 2nd and 3rd semesters. MERP program summary, Exhibit A to Essangui Affidavit.

8. MERP adheres to academic policies specifically established for the program and not those in place for Ross University School of Medicine. All academic matters, including grading policies and academic standards are within the purview of the MERP Advisory Committee, comprised of selected members of MERP faculty, the Program Director, and the administrative oversight team. MERP program summary, Essangui Affidavit, page 7.

9. To finance her enrollment into MERP Plaintiff obtained a private student loan advanced by Citibank. This loan was subsequently assigned to and is now held by Defendant. The original loan amount was $23,670 which was used to pay for the MERP program fees and books, for rent as well as living expenses in South Miami, Florida. At this time Plaintiff owes approximately $40,170.12.

10. Defendant is a for profit company and the loan made in this proceeding was not subsidized by the federal government.

## ARGUMENT

### A. STANDARDS GOVERNING MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be entered for the moving party when there is no genuine issue of material fact. In ruling on a motion for summary judgment, the trial court addresses two issues: (1) whether the pleading, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine dispute as to any material fact and (2) whether the movant is entitled to judgment as a matter of law. In addition, inferences to be drawn from underlying facts must be viewed in the light most favorable to the opposing party, and even if it is unlikely that the opposing party will not prevail at trial. *Harlow v. Fitzgerald,* 457 U.S. 800 (1982).

In decisions interpreting Rule 56, the United States Supreme Court has disapproved any continued reluctance by trial courts to grant summary judgment in appropriate cases stating:

Summary judgment procedure is properly regarded not as a disfavored procedural short cut, but rather as an integral part of the [rules of procedure] which are designed " to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Cartarett,* 477 U.S. 317, 327, 106 S. Ct. 2548, 2555

4

(1986)(citations omitted). In deciding a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, the" test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir. 1999). " As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. At 250.

The facts should be reviewed in the light most favorable to the non-moving party. See *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 176 (1962)). The non-moving party" must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, and must produce more than a " mere scintilla" of evidence to demonstrate a genuine issue of material fact and avoid summary judgment. See *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

**B.  PLAINTIFF CANNOT SUSTAIN ITS BURDEN TO SHOW THAT THE PRIVATE STUDENT LOAN THAT ENABLED PLAINTIFF TO ENROLL IN THE MERP IS PROTECTED UNDER SECTION 523(A)(8) OF THE BANKRUPTCY CODE**

Section 523(a)(8) addresses the dischargeabiilty of student loans, and provides:

>(8)  unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for--
>>(A)
>>>(i)  an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>>>(ii)  an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>>(B)  any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986 [26 USCS § 221(d)(1)], incurred by a debtor who is an individual;

11 U.S.C. § 523(a)(8). Stated more plainly, Section 523(a)(8) excepts four types of educational claims from discharge: (1) loans made, insured, or guaranteed by a governmental unit; (2) loans made under any program partially or fully funded by a governmental unit or nonprofit institution; (3) claims for funds received as an educational benefit, scholarship, or stipend; and (4) any "qualified educational loan" as that term is defined in the Internal Revenue Code. To discharge a student loan it must be established that the student loan imposes an undue hardship unless the loan does not fit into one of these four categories.

Regarding the burdens assigned to each of the parties in this adversary proceeding, "[u]nder § 523(a)(8), the lender has the initial burden to establish the existence of the debt and that the debt is an educational loan within the statute's parameters. . . . The burden then shifts to the debtor to prove [undue hardship] by a preponderance of the evidence." *Roth v. Educ. Credit Mgmt. Corp*. (*In re Roth*), 490 B.R. 908, 916-17 (9th Cir. BAP 2013) (citations omitted); *see Shells v. U.S. Dep't of Educ.* (*In re Shells*), 530 B.R. 758, 763 (Bankr. E.D. Cal. 2015); *Scott v. U.S. Dep't of Educ.* (*In re Scott*), 417 B.R. 623, 629 (Bankr. W.D. Wash. 2009).

In this adversary proceeding, Plaintiff has not plead an undue hardship, but rather that the loan at issue does not fit into any of the four categories of protected

student loans. It therefore falls to the Defendant to establish that its loan is protected by Section 523(a)(8). All parties agree that the loan at issue is a private student loan and therefore not made, insured, or guaranteed by a governmental unit or made under any program partially or fully funded by a governmental unit or nonprofit institution. As a result Section 523(a)(8)(A)(i) does not apply. Therefore, the Defendant will only prevail if it can establish that the loan represents funds received as an educational benefit, scholarship, or stipend or is a "qualified educational loan" as that term is defined in the Internal Revenue Code.

### 1. The Loan Does not Represent funds received as an educational benefit, scholarship, or stipend

Whether a private student loan could be considered an "educational benefit" within the meaning of Section 523(a)(8)(A)(ii) was discussed and rejected by the 9th Circuit Bankruptcy Appellate Panel in *Kashikar v. Turnstile Capital Mgmt., LLC* (In re Kashikar), 567 B.R. 160 (B.A.P. 9th Cir. 2017). Their succint conclusion: a " 'loan' is not an 'educational benefit' within § 523(a)(8)(A)(ii)." 567 B.R. at 167.

The BAP reasoned that to hold otherwise would be to negate the meaning of Section 523(a)(8)(B) by swallowing that section, citing their earlier decision of *Institute of Imaginal Studies v. Christoff* (*In re Christoff*), 527 B.R. 624, 632 (9th Cir. BAP 2015):

> *Christoff* is instructive. In that case, we held that an "obligation to repay funds received as an educational benefit" is different from an "educational overpayment or loan" or a "qualified educational loan." We stated:
>
> This result [that the student loan debt was dischargeable because it did not constitute "funds received"] is bolstered by the changes made to § 523(a)(8) by Congress in BAPCPA. As noted above, the exact wording used in amended § 523(a)(8)(A)(ii) was formerly a part of § 523(a)(8). However, BAPCPA set off the "obligation to repay funds received" language from the other provisions of § 523(a)(8) in a new subsection. We agree with the bankruptcy court, that in restructuring the discharge exception in this fashion, Congress created "a separate category delinked from the phrases 'educational benefit or

loan' in § 523(a)(8)(A)(i) and 'any other educational loan' in § 523(a)(8)(B)." **Put another way, "new" § 523(a)(8)(A)(ii), now standing alone, excepts from discharge only those debts that arise from "an obligation to repay funds received as an educational benefit," and must therefore be read as a separate exception to discharge as compared to that provided in § 523(a)(8)(A)(i) for a debt for an "educational overpayment or loan" made by a governmental unit or nonprofit institution or, in § 523(a)(8)(B), for a "qualified education loan."**

\*   \*   \*

We further rejected the lender's argument that "loan" can be read into § 523(a)(8)(A)(ii):

> **[The university's] arguments conflating "loan" as used in § 523(a)(8)(A)(i) and (a)(8)(B) . . . with "an obligation to repay funds received" as provided in § 523(a)(8)(A)(ii) are unconvincing.** According to [the university], "[t]here is no reason why the word 'funds' should not be interpreted in the same light that 'loans' has been interpreted in prior cases in the Ninth Circuit . . . ." In effect, [the university] argues that we should read § 523(a)(8)(A)(ii) to say "loans received" as opposed to "funds received." But this we must not do. . . . **Instead, we must presume that, in organizing the provisions of § 523(a)(8) as it did in BAPCPA, Congress intended each subsection to have a distinct function and to target different kinds of debts. . . . [Section] 523(a)(8)(A)(ii) is not a 'catch-all' provision designed to include every type of credit transaction that bestows an educational benefit on a debtor."**

*Kashikar v. Turnstile Capital Mgmt., LLC* (*In re Kashikar*), 567 B.R. 160, 166-167 (B.A.P. 9th Cir. 2017), *citing Institute of Imaginal Studies v. Christoff* (*In re Christoff*), 527 B.R. 624, 634 (9th Cir. BAP 2015) (emphasis in original).

*See also* the following cases agreeing that section 523(a)(8)(A)(ii) should not be interpreted to negate section 523(a)(8)(B):

*Decena v. Citizens Bank (In re Decena),* 549 B.R. 11, 18-20 (Bankr. E.D.N.Y. 2016) (reversed on other grounds) ("The Court … believes that Congress intended section 523(a)(8)(A)(ii) to encompass alternatives to the typical debtor—creditor relationship in the education context. These alternatives encompass cash benefit programs, such as veteran educational benefits, stipends for teaching assignments,

8

conditional grants, cash scholarships and other obligations that are distinct from traditional student loans.").

*Dufrane v. Navient Sols., Inc. (In re Dufrane),* 566 B.R. 28, 38 (Bankr. C.D. Cal. 2017) ("In the court's view, the fact that Congress chose to separately classify from loans the discharge exception for 'an obligation to repay funds received as an educational benefit, scholarship or stipend' bolsters the conclusion that commercial loans by for-profit lenders, such as the SunTrust Private Loans, fall outside the scope of § 523(a)(8)(A)(ii).")

Thus to consider the Defendant's private loan to be an *educational benefit* would be to negate the third disjunctive element for student loan nondischargeability that Congress presented within Section 523(a)(8)(B), namely for an educational loan that is a "qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986." Therefore the Defendant cannot sustain its burden to establish that its loan is nondischargeable within the type of transactions contemplated by Section 523(a)(8)(A)(ii).

### B. MERP is not an "eligible educational institution" and therefore the Defendant's loan is not protected by Section 523(a)(8)(B).

§ 523(a)(8)(B) protects from discharge "qualified educational loans" as defined by 26 U.S.C. § 221(d)(1). In turn, section 221(d)(1) of title 26 provides as follows:

> any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses—
> a. which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the taxpayer as of the time the indebtedness was incurred,
> b. which are paid or incurred within a reasonable period of time before or after the indebtedness is incurred, and
> c. which are attributable to education furnished during a period during which the recipient was an eligible student.

9

The term "qualified higher education expenses" is further defined as "the cost of attendance ... at an eligible educational institution." 26 U.S.C. § 221(d)(1). An " 'eligible educational institution' . . . is that which is described and eligible to participate in a program under Title IV of the Higher Education Act of 1965, as amended. 26 U.S.C. § 25A(f)(2)." *Rumer v. Am. Educ. Servs.* (*In re Rumer*), 469 B.R. 553, 565 (Bankr. M.D. Pa. 2012) *citing In re Wills*, 2010 Bankr. LEXIS 1478, 2010 WL 1688221, *7 (S.D. Ind. April 23, 2010) (citations to the Internal Revenue Code omitted).

Title IV of the Higher Education Act authorizes educational programs to participate in federal financial aid. *See*, *e.g.,* the Federal Student Aid website, http://federalstudentaid.ed.gov/site/front2back/programs/programs/fb_03_01_0030.htm (http://bit.ly/2tHjgqc). Requirements generally for establishing eligibility for participating in federal student aid under Title IV are found in Title 20, U.S.C. § 1001 *et seq.* and 34 CFR 600.1 *et seq.*

There is no dispute that in 2008 at the time of her attendance MERP did not participate in federal financial aid. The materials that the Plaintiff received from MERP (which remained substantially unchanged through MERP materials published in 2014) make clear that " Students accepted to the Medical Education Readiness Program (MERP) are not eligible for federal student loans, however they may be eligible for private loan programs at the lender's discretion." *See* American University of the Caribbean School of Medicine Financial Aid Planning Guide, page 2, attached to the Essangui Affidavit, Exhibit B.

In discovery, Plaintiff sought facts to determine whether the Defendant would be able to sustain its burden to establish that the MERP was an eligible educational institution. Specifically, the Plaintiff requested the following:

10

> 12. If you contend that any loans due to you by the Plaintiff are "qualified education loans" within the meaning of 11 U.S.C. § 523(a)(8) and Section 221(d) of the Internal Revenue Code of 1986 state all facts upon which you rely in making such contention.

In response, Defendant stated:

> Subject to and without waiving the foregoing objections, Defendant answers that Ross University is a Title IV school as identified by ED School Code G22460. See http://www.finaid.org/fafsa/20071101FederalSchoolCodeList.pdf at page 76. The Disclosure Statement indicates the funds advanced were distributed directly to Ross University as requested by Plaintiff.

See Defendant's Answers to Interrogatories, Exhibit "B" hereto. By this answer, Defendant apparently intends to bootstrap the Title IV eligibility of Ross University upon MERP. However, while MERP may be partially administered with the assistance of Ross University, MERP is not a division of Ross University; it is "a program designed and offered by Dominica Management, Inc. in cooperation with the Faculty of the Ross University School of Medicine." MERP specifically is *not* eligible to offer any financial aid. MERP has its own separate advisory committee and academic standards:

> MERP will adhere to academic policies specifically established for the program *and not those in place for Ross University School of Medicine*. All academic matters, including grading policies and academic standards are within the purview of the MERP Advisory Committee, comprised of selected members of MERP faculty, the Program Director, and the administrative oversight team.

*See* the program descriptions described in the materials received by the Plaintiff from MERP, Essangui Affidavit Exhibit A.

Perhaps the most decisive evidence to refute that Ross and MERP are the same is the letter Plaintiff received from Ross in July, 2008 welcoming her to the institution. *See* Exhibit "C" to Plaintiff's Affidavit. This letter informs Plaintiff of her "admission to Ross University School of Medicine for the class beginning September 8th, 2008." Certainly, had the Plaintiff already been part of Ross University when she

11

received the private student loan in March, 2008 she would not have been welcomed again to begin medical school in July.

Defendant's response to Interrogatory No. 12 also fail to address the response by DeVry Education Group ("DeVry") to the subpoena the Defendant issued upon DeVry seeking information and documents pertaining to the relationship between Ross, DeVry and the MERP. In response to this subpoena DeVry produced the documents attached as Exhibit A hereto. These exhibits included a description from DeVry's 10-K filing that provides an overview of DeVry's operations; Exhibit 21 to the 10-K filing that summarizes DeVry subsidiaries; and a description of the MERP.

> *The overview*. In the overview, DeVry has highlighted pertinent provisions:
>
> DeVry Medical International ("DMI") operates three institutions:
> American University of the Caribbean School of Medicine ("AUC") confers the Doctor of Medicine ("M.D.") degree;
> Ross University School of Medicine ("RUSM") confers the M.D. degree; and
> Ross University School of Veterinary Medicine ("RUSVM") confers the Doctor of Veterinary Medicine ("D.V.M.") degree.
> \*   \*   \*
> Together, the three schools along with the Medical Education Readiness Program ("MERP") and the Veterinary Preparation Program ("Vet Prep") had 5,850 students enrolled in the May 2016 semester.
> \*   \*   \*
> MERP assists prospective RUSM and AUC students in building the academic foundation they need to be successful in medical school and to achieve their goals of becoming physicians.

*The MERP Website.* In response to the Subpoena, DeVry refers to the MERP website, http://www.medschoolprep.com/index.cfm. where the following description appears:

> MERP operates under the auspices of DeVry Medical International, a subsidiary of DeVry Education Group, one of the world's largest providers of education services. *MERP operates independently of any medical school, with its own administration, instructors and staff.*

http://www.medschoolprep.com/Medical-School-Affiliations1.cfm (emphasis added).

Based upon the facts presented by DeVry, Defendant cannot possibly establish that MERP is an "eligible educational institution".

First, even DeVry does not consider MERP an "institution" but rather simply a "program". In its 10-K submission DeVry states that it operates only three institutions: American University of the Caribbean School of Medicine; Ross University School of Medicine; and Ross University School of Veterinary Medicine. In addition to these institutions it operates two programs: the MERP and the Veterinary Preparation Program.

To be further clear that MERP is not part of Ross, DeVry produced an excerpt from the MERP website that stated plainly "MERP operates independently of any medical school, with its own administration, instructors and staff."

Defendant relies entirely upon the fact that funds for Plaintiff's enrollment in MERP were sent to Ross University. This fact alone, however, does not establish that the MERP, a program that operates independently of any medical school, is an institution qualified to offer federal financial aid under Title IV. To the contrary, all the controlling evidence, including DeVry's published materials and its own Financial Aid brochure, indicate that MERP is *not* qualified to receive federal financial aid and therefore is not Title IV eligible. Under these circumstances, Defendant simply cannot establish any protection under Section 523(a)(8)(B).

## CONCLUSION

Based upon the undisputed material facts defendant cannot sustain its burden to show that the private student loan that enabled Plaintiff to enroll in the MERP is protected under Section 523(a)(8) of the Bankruptcy Code. Accordingly, this Court should grant summary judgment in favor the Plaintiff to determine that the loan has been discharged in this Chapter 7 case.

Dated: June 30, 2017

                By:   */s/Ronald J. Drescher*
                       RONALD J. DRESCHER
                       (No. 08712)
                       Drescher & Associates, P.A.
                       4 Reservoir Circle
                       Suite 107
                       Baltimore, MD 21208
                       (410) 484-9000
                       Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Motion* was sent via the Court's ecf system on this the 30 day of June, 2017 to:

Michael J. Klima, Jr.
Peroutka, Miller, Klima & Peters, P.A.
8028 Ritchie Highway, Suite 300
Pasadena, MD 21122


_____/s/_____
Ronald J. Drescher