Entered: October 2nd, 2017
Signed: October 2nd, 2017



**MICHELLE M. HARNER**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Yolande E. Essangui, | * | Case No. 16-12984-MMH |
| | * | |
| Debtor. | * | Chapter 7 |
| | * | |
| * * * * * * * | * | * * * * * * |
| | * | |
| Yolande E. Essangui, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Adv. No. 16-00201-MMH |
| | * | |
| SLF V-2015 Trust, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |
| * * * * * * * | * | * * * * * * |

## <u>MEMORANDUM OPINION</u>

In general, a debtor cannot obtain a discharge of student loan obligations in a bankruptcy

case. That general principle is, however, subject to certain qualifications. The most frequently

discussed is a debtor's ability to seek a hardship discharge of the obligations under

section 523(a)(8) of the U.S. Bankruptcy Code. 11 U.S.C. §§ 101, et seq. (the "Code").

Nevertheless, even before reaching the question of "hardship," the Court must determine whether

the student loan obligations at issue fall within the statutory categories protected by Congress

under section 523(a)(8)(A) or (B) of the Code. This latter question is the subject of the parties' respective motions for summary judgment. It basically requires the Court to consider whether the category of "nondischargeable student loans" includes any loan made to a student for educational purposes.

Section 523(a)(8) includes three subsections addressing educational debt that is excepted from discharge. The parties do not argue that either section 523(a)(8)(A)(i) or 523(a)(8)(B) is applicable to this case. Rather, the defendant asserts that its debt is covered by section 523(a)(8)(A)(ii), as "an obligation to repay funds received as an educational benefit, scholarship, or stipend." 11 U.S.C. § 523(a)(8)(A)(ii). For the reasons set forth below, the Court concludes that the loan is not an educational benefit under section 523(a)(8)(A)(ii) and, therefore, is dischargeable in the Debtor's chapter 7 case. To hold otherwise would ignore the plain language of the statute and render subsections (A)(i) and (B) largely meaningless. Indeed, if subsection (A)(ii) covers any loan for educational purposes, much of the language in the remainder of the section is superfluous. The Court accordingly will enter an Order granting the Debtor's (Plaintiff's) Motion for Summary Judgment and denying the Defendant's Motion for Summary Judgment.

## I.    Procedural Background

Yolande E. Essangui (the "Debtor") filed this chapter 7 case on March 8, 2016. On April 21, 2017, she initiated this adversary proceeding to determine the dischargeability of a loan used, in part, for educational purposes. The Debtor's Complaint names numerous entities as defendants because the subject loan has changed hands several times since the execution of the original documents. GS2 Grantor Trust 2016-A (the "Defendant"), assignee of SLF V-2015 Trust, was the only defendant to file an Answer to the Debtor's Complaint.

On June 29, 2017, after discovery was completed, the Defendant filed its Motion for Summary Judgment at ECF 43, and the Debtor filed a response thereto at ECF 46. On June 30, 2017, the Debtor filed her Motion for Summary Judgment at ECF 44, and the Defendant filed a response thereto at ECF 45. The Defendant's response did not contest the Debtor's assertion that the loan is not a "qualified education loan" under section 523(a)(8)(B).[1] Accordingly, the only disputed issue before the Court is whether the Defendant's debt is excepted from discharge under section 523(a)(8)(A)(ii). Counsel for the parties confirmed the limited scope of the dispute at oral argument on the motions for summary judgment, held on September 6, 2017.

## II.    Jurisdiction and Legal Standards

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Local Rule 402 of the United States District Court for the District of Maryland. This proceeding is a "core proceeding" under 28 U.S.C. § 157(b)(2).

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7056, governs the parties' respective motions for summary judgment. A moving party may be entitled to judgment as a matter of law under Civil Rule 56 in the absence of any genuine issue of material fact. Fed. R. Civ. P. 56. *See Emmett v. Johnson,* 532 F.3d 291, 297 (4th Cir. 2008) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986)). *See also Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (discussing standards for summary judgment). "When a party has submitted sufficient evidence to support its request for summary judgment, the burden shifts to the nonmoving party to show that there are genuine issues of material fact." *Emmett*, 532 F.3d at 297. Here, the parties agree that there are no

---

[1] Specifically, in its response, the Defendant stated, "Defendant does not intend to assert within its Motion for Summary Judgment or at trial in this matter that Plaintiff's loan is a qualified educational loan under Section 523(a)(8)(B)." Def.'s Mem. in Supp. of Opp'n 2-3, ECF 45. In her Motion for Summary Judgment, Plaintiff asserts that "[a]ll parties agree that … Section 523(a)(8)(A)(i) does not apply." Pl.'s Mot. for Summ. J. 7, ECF 44.

disputed issues of material fact and that the resolution of this proceeding turns on the application of section 523(a)(8)(A)(ii) to those facts.

### III.      Material Undisputed Facts

In March 2008, the Debtor enrolled in a Medical Education Readiness Program ("MERP"). MERP is a preparatory course of instruction that, upon completion, allows students to enroll at Ross University School of Medicine. MERP is not qualified as a Title IV institution under the Higher Education Act of 1965 (as amended) and federal aid, grants, or loans are not available to students attending MERP. The Debtor completed MERP, and she enrolled at Ross University for the fall 2008 semester. The Debtor did not complete her coursework or graduate from Ross University, as she was dismissed from Ross University in December 2008.

The Debtor financed her participation in MERP.[2] Specifically, she applied for and received a CitiAssist Health Professions Loans Online Loan from Citibank N.A. (the "Loan"). Citibank disbursed approximately $23,670.00 to the Debtor under the Loan on March 20, 2008. The Debtor used the proceeds of the Loan to pay for MERP fees and her books for the program, as well as rent and living expenses incurred while attending the program. Citibank sold its interest in the Loan to SLF V-2015 Trust, which then assigned its interest in the Loan to GS2 Depositor 2016-A SPV, LLC. Through a Trust Agreement, GS2 Depositor 2016-A SPV, LLC, deposited the Loan with the Defendant, which is the current holder of the Loan. The Defendant asserts that the current balance is approximately $37,175.25, plus interest.

The Defendant argues that the Loan is nondischargeable in the Debtor's chapter 7 case under section 523(a)(8)(A)(ii) because the Loan qualifies as "an obligation to repay funds

---

[2] In her Affidavit in Support of the Motion for Summary Judgment, the Debtor stated, "[t]o finance my enrollment into MERP I obtained a private student loan advanced by Citibank in March, 2008." Pl.'s Aff. in Supp. of Mot. for Summ. J. ¶ 10, ECF 44-2.

received as an educational benefit" and the Debtor is not seeking a hardship discharge. The Debtor contests that position and asserts that the Loan is not protected against discharge under the statute. The Court has reviewed the parties' respective pleadings, the positions of their counsel at oral argument, and the relevant statutory and case law addressing the disputed legal issue. The Court's analysis and conclusions of law are set forth below.

## IV.    Legal Analysis

Prior to 1976, the list of nondischargeable obligations under the Bankruptcy Act of 1898 included only a few major categories. Bankruptcy Act of 1898, 11 U.S.C. § 35 (1976 ed.) (repealed 1978). Notably absent from this list was a category for student loan obligations. Thus, at that time, student loan obligations were dischargeable in bankruptcy. That no longer is the case. In fact, the pendulum appears to have swung to the opposite extreme, with many courts and some commentators suggesting that any money received by, or on behalf of, a debtor for educational purposes is nondischargeable under section 523(a)(8) of the Code. *See, e.g.*, *Rumer v. Am. Educ. Servs. (In re Rumer)*, 469 B.R. 553, 562 (Bankr. M.D. Pa. 2012) (noting that "[m]ost courts … have analyzed whether a loan is a qualified educational expense by focusing on the stated purpose for the loan when it was obtained, rather than how the proceeds were actually used …"). A brief exploration of the historical treatment of student loan obligations in bankruptcy is helpful to understand and accurately assess the current state of the law and the parties' respective positions in this adversary proceeding.

### A.    History of Section 523(a)(8)

Congress first imposed limitations on the dischargeability of student loans in 1976, by enacting section 439A of the Higher Education Act of 1965. *See* Education Amendments of

1976, Pub. L. No. 94-482, § 127(a), 90 Stat. 2081, 2099 (repealed 1978). Section 439A provided that "[a] debt which is a loan insured or guaranteed under the authority of this part may be released by a discharge in bankruptcy under the Bankruptcy Act only if such" loan first became due more than five years before the subject bankruptcy case or the repayment of the loan imposed an undue hardship on the debtor. *Id.* The legislative history of section 439A suggests that Congress was acting specifically to protect the solvency of the federal student loan program, as well to mitigate perceived abuses in the system. *See Johnson v. Mo. Baptist Coll. (In re Johnson)*, 218 B.R. 449, 451–453 (B.A.P. 8th Cir. 1998) (explaining the genesis of student loan nondischargeability legislation and the concerns articulated in the relevant legislative history). Commentators debate the necessity of such action. *See, e.g.*, John A.E. Pottow, *The Nondischargeability of Student Loans in Personal Bankruptcy Proceedings: The Search for a Theory*, 44 CANADIAN BUS. L.J. 245, 248–249 (2007) (summarizing the history of student loan nondischargeability and the related empirical evidence).[3] Regardless, the language of section 439A targeted the federal student loan program and curtailed a student's ability to discharge those obligations in bankruptcy.

Congress next incorporated the key provisions of section 439A into the 1978 Bankruptcy Code and repealed the prior law. Pub. L. No. 95-598, 92 Stat. 2549 (1978). Section 523(a)(8) originally read:

> A discharge under section 727 … does not discharge an individual debtor from any debt:
> …
> (8) to a governmental unit, or a nonprofit institution of higher education, for an educational loan, unless—

---

[3] *See also* Rafael I. Pardo & Michelle R. Lacey, *Undue Hardship in the Bankruptcy Courts: An Empirical Assessment of the Discharge of Educational Debt*, 74 U. CIN. L. REV. 405, 420–424 (2005) (presenting empirical data); National Bankruptcy Review Commission Report, at 209–210 (Oct. 20, 1997) (discussing debates surrounding student loan dischargeability in the late 1970s).

> (A) such loan first became due before five years before the date of the filing of the petition; or
> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents; ….

*Id.* Congress then clarified the scope of section 523(a)(8) in 1979 and 1984, first by adding language to cover educational loans under certain programs and then by eliminating the reference to "higher education." Pub. L. No. 96-56, 93 Stat. 387 (1979); Pub. L. No. 98-353, 98 Stat. 333 (1984). The 1979 amendments also modified the five year limitation on dischargeability. After those amendments, section 523(a)(8) read:

> A discharge under section 727 … does not discharge an individual debtor from any debt:
> …
> (8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a non-profit institution, unless—
> (A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or
> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents; ….

11 U.S.C. § 523(a)(8) (1986 ed.).

Despite the continuous refinement of section 523(a)(8), courts struggled with its application. For example, in 1986, the United States Court of Appeals for the Eighth Circuit was confronted with the question of whether a conditional scholarship was an "educational loan" protected from discharge under the version of section 523(a)(8) quoted directly above. *U.S. Dep't of Health & Hum. Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986). The lower courts in *Smith* held that the conditional scholarship at issue was not a loan under the statute and, as such, was dischargeable. *Id.* at 123. The Eighth Circuit reversed, finding that because the debtor had received money and signed an agreement to repay that money under certain conditions, the conditional scholarship was an educational loan. *Id.* at 125. Notably, the conditional scholarship

7

at issue was granted under a federal program—the Physician Shortage Area Scholarship Program—that provided financial assistance to medical students who agreed to serve certain underserved geographical areas after graduation. It thus was akin to the federal student loan program that initially triggered action by Congress in 1976 under the Higher Education Act of 1965. In addition, not all courts agreed with the Eighth Circuit's broad interpretation of the term "loan" in the context of section 523(a)(8).[4]

This uncertainty in the scope of section 523(a)(8) led, in part, to the 1990 amendments to section 523(a)(8). *See, e.g.*, *Dufrane v. Navient Sols., Inc. (In re Dufrane)*, 566 B.R. 28, 35–39 (Bankr. C.D. Cal. 2017) (explaining history of 1990 amendments); *Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49, 55–57 (Bankr. E.D.N.Y. 2016) (same). Those amendments, among other things, added the language to the statute that underlies the parties' dispute in this adversary proceeding. Specifically, the amendments added the language "or for an obligation to repay funds received as an educational benefit, scholarship or stipend" to section 523(a)(8). 11 U.S.C. § 523(a)(8) (1990 ed.). Courts generally interpreted this language to create a new category of nondischargeable debt that excluded for-profit loans. *See, e.g., Jones v. H&W Recruiting Enter., LLC (In re Jones)*, 242 B.R. 441, 443–444 (Bankr. W.D. Tenn. 1999) (holding debt owed to for-profit trucking company dischargeable in bankruptcy and noting that broad application of new language would subsume the old language); *United Res. Sys., Inc. v. Meinhart (In re Meinhart)*, 211 B.R. 750, 752–754 (Bankr. D. Colo. 1997) (discussing term "educational benefit" in the context of holding for-profit lender not protected by section 523(a)(8)). These courts based their holdings, in part, on the language of the statute and that "[a]n example of such

---

[4] *See, e.g.*, *Boston Univ. v. Mehta (In re Mehta)*, 262 B.R. 35 (D.N.J. 2001); *Ray v. Univ. of Tulsa (In re Ray)*, 262 B.R. 544 (Bankr. N.D. Okla. 2001); *Cmty. Mem'l Hosp. v. Gordon (In re Gordon)*, 231 B.R. 459 (Bankr. D. Conn. 1999). *See also Johnson*, 218 B.R. at 455–457 (holding subject arrangement to be a loan, but reviewing case law on both sides of the issue).

an obligation would be for funds provided as grants that must be repaid only under certain conditions." *Scott v. Midwestern Training Ctr., Inc. (In re Scott)*, 287 B.R. 470, 474 (Bankr. E.D. Mo. 2002). Notably, in 2005, when Congress again amended section 523(a)(8), it did not change the substance of the existing statutory language. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109–8, 119 Stat. 23, enacted April 20, 2005.[5] The version of section 523(a)(8) resulting from BAPCPA is the version in effect today.

BAPCPA made two changes to section 523(a)(8) that are relevant to this adversary proceeding. First, the amendments separated the existing language of the section into two subsections, providing that the following kinds of debt are not dischargeable:[6]

> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; ….

11 U.S.C. § 523(a)(8). Second, the amendments added a completely new section 523(a)(8)(B). That new subsection described an additional kind of nondischargeable debt as:

> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual ….

*Id*.

The legislative history of BAPCPA, though sparse, suggests that the entire package of amendments was intended to enhance fairness for all parties, including debtors and creditors, and

---

[5] In between the 1990 and 2005 amendments, Congress eliminated the time parameters used to evaluate whether a student loan obligation fell under section 523(a)(8) and left "undue hardship" as the only qualification to the nondischargeability of the kinds of student loan obligations covered by the section. Pub. L. No. 105-244, 112 Stat. 1581, 1837 (1998). That amendment bears little on the issue before the Court.

[6] The Defendant and some courts suggest that the separation of the existing language into two subsections signals a change in the substantive meaning of the language now in subsection (A)(ii). *See, e.g., Sensient Tech. Corp. v. Baiocchi (In re Baiocchi)*, 389 B.R. 828 (Bankr. E.D. Wis. 2008). For the reasons set forth below, the Court finds that the plain language of the section suggests otherwise. Indeed, the separation appears to have been necessitated by Congress's restructuring of section 523(a)(8) to begin the section with the undue hardship language and then introduce the categories of nondischargeable debt with "for— …." 11 U.S.C. § 523(a)(8).

to "respond to many of the factors contributing to the increase in consumer bankruptcy filings …
to eliminate abuse in the system." H.R. Rep. No. 109-31(I), at 2 (2005). This legislative history
does not contain any policy statements directed specifically at the treatment of student loans
under section 523(a)(8).[7] Similar to the conversation surrounding student loan legislation in the
late 1970s, commentators debate the extent of abuse in the system and the appropriate treatment
of student loans in bankruptcy. *See, e.g*., Pottow, 44 CANADIAN BUS. L.J. at 250, 251–278
(noting that BAPCPA overruled "the recommendations of the National Bankruptcy Review
Commission to scrap nondischargeability" and reviewing various policy considerations).[8]
Nevertheless, for purposes of this analysis, the Court acknowledges the general policy goals
articulated in the legislative history of BAPCPA.

### B.    The Application of Section 523(a)(8) to the Loan

The Court's task is to determine the effect of the BAPCPA amendments to
section 523(a)(8) on the Debtor's obligation to repay the Loan. The Debtor states that she used
the proceeds of the Loan to pay fees associated with the MERP program. Pl.'s Aff. ¶ 10,
ECF 44-2. She also admits that she "used the funds received from the Note for an educational
benefit."[9] Pl.'s Resp. to Def.'s Req. for Admis., No. 6, ECF 43-6. The Debtor denies, however,
that the Loan constitutes "funds received as an educational benefit" under
section 523(a)(8)(A)(ii). Pl.'s Mot. for Summ. J. 7-9, ECF 44. The Defendant, on the other hand,

---

[7] *See Nunez v. Key Educ. Res./GLESI (In re Nunez),* 527 B.R. 410, 413 (Bankr. D. Or. 2015) (citing H.R. Rep.
No. 109-31(I) (2005), and highlighting the only reference to section 523(a)(8) in that legislative history, which is a
straight-forward description of the language added as subsection (B)).

[8] *See also*, *e.g.,* Rafael I. Pardo & Michelle R. Lacey, *The Real Student-Loan Scandal: Undue Hardship Discharge,*
83 AM BANKR. L.J. 179, 180–181 (Winter 2009); Pardo & Lacey, 74 U. CIN. L. REV. at 405; National Bankruptcy
Review Commission Report, at 210–217 (discussing empirical data at the time of, and prior to, the 1997 report).

[9] At oral argument, the Debtor's counsel explained that this admission reflected the fact that any enrollment in an
educational program conferred a benefit. Oral Argument at 10:23. The Court understands this admission to be an
acknowledgement by the Debtor that she used the Loan *for* an educational benefit. The Debtor did not admit that the
Loan was an educational benefit. Further, the Debtor denied that she "received an educational benefit from the
proceeds of the Note." Pl.'s Resp. to Def.'s Req. for Admis., Nos. 1 and 8, ECF 43-6.

argues that the term "funds" under that subsection includes loans and that because the Debtor used the Loan for educational purposes, the Loan falls directly within the subsection. Def.'s Mem. in Supp. 5-6, ECF 43. Notably, the parties' respective positions in this adversary proceeding reflect a growing split among the courts addressing this precise legal issue. Neither the parties nor the Court could locate precedent directly on point in this Circuit.

A review of the cases addressing the interpretation of section 523(a)(8)(A)(ii) reveals a division among the courts not only in result, but also in approach to the statutory language. In what appears to be a majority of the decisions,[10] courts have focused on the stated, overarching policy objectives underlying section 523(a)(8) and BAPCPA, and have taken a broad and somewhat liberal approach to interpreting the statutory language. For example, in *Micko v. Student Loan Finance Corp. (In re Micko)*, the bankruptcy court relied on the BAPCPA changes to support including a private nonprofit student loan within the pre-BAPCPA version of section 523(a)(8). 356 B.R. 210, 216–217 (Bankr. D. Ariz. 2006).[11] Likewise, in *Brown v. Citibank, N.A. (In re Brown)*, the bankruptcy court determined that a loan used by the debtor to support herself while she studied and then sat for the California bar examination was a nondischargeable student loan obligation. 539 B.R. 853 (Bankr. S.D. Cal. 2015) (adopting the reasoning of *Skipworth v. Citibank Student Loan Corp. (In re Skipworth)*, 2010 WL 1417964 (Bankr. N.D. Ala. Apr. 1, 2010), and concluding "that § 523(a)(8)(A)(ii) should be interpreted broadly to include a bar examination loan under the definition of 'educational benefit'"). This

---

[10] In its Motion for Summary Judgment, the Defendant refers to the cases interpreting section 523(a)(8) more broadly as the "majority" position. The Court uses the terms "majority" and "minority" in this decision only to separate and identify the two competing lines of cases on the legal issue. The Court has not conducted a formal tally to determine which position is in the lead at this point.

[11] *But see London-Marable v. Sterling*, 2008 WL 2705374 (D. Ariz. July 9, 2008) (distinguishing *Micko* and holding a private loan extended for educational purposes dischargeable).

line of cases basically includes any loan used at least in part for educational purposes—whether a public or a private loan—within the purview of section 523(a)(8).[12]

More recent decisions have questioned this result. These courts tend to focus more on the precise language and structure of the statute and, through that prism, express several concerns with the majority's approach. Those concerns include: (1) Congress's use of the word "funds" rather than "loan" in section 523(a)(8)(A)(ii),[13] particularly given that "loan" is used elsewhere in the section; and (2) that an "educational benefit" is a term different from "educational benefit overpayment or loan" or "educational loan" used elsewhere in the section. As explained by the Bankruptcy Appellate Panel for the Ninth Circuit, "those bankruptcy cases [in the majority], perhaps inadvertently, imprecisely quote the provisions of the discharge exception statute as applying to 'loans received,' as opposed to the 'obligation to repay funds received.'" *Inst. of Imaginal Studies v. Christoff (In re Christoff)*, 527 B.R. 624, 635 (B.A.P. 9th Cir. 2015). *See also Campbell*, 547 B.R. at 54 (noting that "[s]ome courts have decided without explanation, or assumed, that 'educational benefit,' as used in § 523(a)(8)(A)(ii), encompasses any loan which relates in some way to education"). Many of the cases in the minority stand for the general proposition that "we must presume that, in organizing the provisions of § 523(a)(8) as it did in BAPCPA, Congress intended each subsection to have a distinct function and to target different kinds of debts." *Christoff*, 527 B.R. at 634.

Although both the majority and minority decisions on this issue are thoughtfully written and strive to implement Congress's intent, the Court finds the minority's position more faithful to the actual language of the statute enacted by Congress. "We begin, as always, with the

---

[12] *See, e.g.*, *Rizor v. Acapita Educ. Fin. Corp. (In re Rizor)*, 553 B.R. 144 (Bankr. D. Alaska 2016); *Rumer*, 469 B.R. at 561–564; *Rabbi Harry H. Epstein Sch., Inc. v. Goldstein (In re Goldstein)*, 2012 WL 7009707 (Bankr. N.D. Ga. Nov. 26, 2012); *Roy v. Sallie Mae (In re Roy)*, 2010 WL 1523996 (Bankr. D.N.J. Apr. 15, 2010).
[13] For example, the court in *Rumer* described the coverage of section 523(a)(8)(A)(ii) as "loans received as an educational benefit, scholarship, or stipend." 469 B.R. at 561.

language of the statute." *Duncan v. Walker*, 533 U.S. 167, 172 (2001) (citations omitted). *See also Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011). As explained by the United States Court of Appeals for the Fourth Circuit, "we must try to discover the plain meaning of th[e] statute using both the text and structure since 'statutory construction … is a holistic endeavor.'" *Healthkeepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 471 (4th Cir. 2011).

Basic principles of statutory construction require that each word, clause, and section of a statute be given independent meaning whenever possible. *See, e.g.*, *Corley v. United States*, 556 U.S. 303, 314 (2009) (explaining that "one of the most basic interpretative canons" is that "'[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant'") (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). Those principles also state that when Congress chooses to use different words in different places within a statute, that choice is intentional and conveys meaning. *See, e.g.*, *Duncan*, 533 U.S. at 173 (observing that "'[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion'") (citations omitted); *Healthkeepers*, 642 F.3d at 472 (same). Applying these, and other canons of construction, to section 523(a)(8) yields the following observations:

*First*, the subject of subsection (A)(ii) is "an obligation to repay funds." That subject is different than "an educational benefit overpayment or loan," which is the subject of subsection (A)(i), and "educational loan," which is the subject of subsection (B). Some courts have recognized this difference and held that "an obligation to repay funds" is not the equivalent of a loan for purposes of section 523(a)(8). *See, e.g.*, *Christoff*, 527 B.R. at 634 (rejecting the notion that the words "loans received" could be substituted for "funds received" and "arguments

conflating 'loan' as used in § 523(a)(8)(A)(i) and (a)(8)(B) … with 'an obligation to repay funds received'"); *Kashikar v. Turnstile Capital Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 167 (B.A.P. 9th Cir. 2017). Although common usage of the word "funds" could (as argued by the Defendant) include the proceeds of a loan, the structure of section 523(a)(8) suggests a more limited and tailored definition. As explained below, both the remaining language of subsection (A)(ii) and consideration of the purpose of each clause within section 523(a)(8), read as a whole, support this conclusion. *See, e.g.*, *Dada v. Mukasey*, 554 U.S. 1, 16 (2008) (explaining that "[i]n reading a statute we must not 'look merely to a particular clause,' but consider 'in connection with it the whole statute'") (citations omitted).

*Second*, subsection (A)(ii) is not focused on just any "obligation to repay funds." Rather, Congress defined the kinds of funds at issue. Specifically, subsection (A)(ii) applies to funds "received as an educational benefit, scholarship, or stipend." *See, e.g.*, *Kashikar*, 567 B.R. at 167 (holding that "a 'loan' is not an 'educational benefit'"). For purposes of this adversary proceeding, the prepositional phrase "as an educational benefit" is relevant and identifies the kinds of funds protected by the subsection. Importantly, in describing the kinds of funds within subsection (A)(ii), Congress used the word "as" rather than "for." The word "as" commonly refers to the role or character of something (or someone) when used in a prepositional phrase. *See, e.g.*, MERRIAM-WEBSTER DICTIONARY (2005) (defining "as" to mean "in the capacity or character of"). In contrast, the word "for" commonly signals the object or purpose of something when used in this grammatical structure. *See, e.g.*, *id.* (defining "for" to mean "toward the purpose or goal of"). Examples of these two different words having two different meanings are found within section 523 itself. For example, section 523(a)(17) references the "debtor's status *as* a prisoner." 11 U.S.C. § 523(a)(17) (emphasis added). Section 523(a)(2)(C)(i)(I) references

"consumer debts owed to a single creditor and aggregating more than $675 *for* luxury goods or services …." 11 U.S.C. § 523(a)(2)(C)(i)(I) (emphasis added). This latter example is particularly apt because it is describing the use of the funds underlying the consumer debt, much like the Defendant's argument concerning the use of the Loan. *See Healthkeepers*, 642 F.3d at 471 (explaining that statutory analysis "includes employing various grammatical and structural canons of statutory interpretation which are helpful in guiding our reading of the text").

In addition, as explained exceptionally well by the courts in *Campbell* and *Dufrane*, Congress delineated three specific kinds of funds within section 523(a)(8)(A)(ii), and that list of categories must be read in a coherent manner. "The canon of statutory construction known as *noscitur a sociis* instructs that when a statute contains a list, each word in that list presumptively has a 'similar' meaning." *Campbell*, 547 B.R. at 55 (citing *Yates v. United States*, 135 S.Ct. 1074, 1089 (2015) (Alito, J., concurring in judgment)). *See also*, *Dufrane*, 566 B.R. at 39 (quoting *Campbell*). The definition or scope of educational benefit thus should align with that of scholarship and stipend—both terms representing funds extended for educational purposes that generally do not need to be repaid unless the recipient fails to graduate or meet other specified requirements. A for-profit student loan does not meet these criteria. For-profit lenders like the Defendant do not forgive loans upon graduation or require repayment only if the borrower fails to graduate or meet other academic milestones. The Court agrees with the courts in *Campbell* and *Dufrane* that "[s]ection 523(a)(8)(A)(ii) excepts from discharge educational debts, other than loans, such as conditional grants and stipends that generally are not required to be repaid." *Dufrane*, 566 B.R. at 40.

*Third*, interpreting subsection (A)(ii) to mean loans used for educational purposes renders subsections (A)(i) and (B) largely meaningless. *See Campbell*, 547 B.R. at 59–60. *See also*

*Corley*, 556 U.S. at 316 (rejecting position that rendered subsection of a statute superfluous and explaining, "we cannot accept the Government's attempt to confuse the critically distinct terms 'involuntary' and 'inadmissible' by rewriting (c) into a bright-line rule doing nothing more than applying (a)"); *Healthkeepers*, 642 F.3d at 472 (adopting a limited definition in statute because "[o]therwise, the directive '[i]n subparagraph 2(A)(i)' would be surplus language in the statute without any effect"); *Burkhart v. Community Bank of Tri-County*, 2016 WL 4013917, at *7 (D. Md. July 27, 2016), *appeal docketed*, No. 16-1971 (4th Cir. Aug. 24, 2016) (applying statutory canons and reaching holding because "[u]nless § 506(d) is relevant to lien avoidance, the Court would be constrained to conclude that the provision is mere surplusage"). That broad reading, which would be necessary to sustain the Defendant's position, would capture any public or private loan that is used at least in part by the Debtor to obtain an educational benefit. It would not matter if the loan was a government loan, incurred in connection with a government or nonprofit program, or a qualified education loan; regardless, subsection (A)(ii) would cover it. Indeed, if that was Congress's intent, it did not need to add subsection (B), which was added at the same time subsection (A)(ii) was designated a separate subsection. One needs only to read the first few words of subsection (B) to understand this point. Subsection (B) begins, "any other educational loan that is a qualified education loan." If any loan extended for educational purposes is already covered by subsection (A)(ii), what could Congress have meant by these additional words in subsection (B)?[14]

Notably, an interpretation of section 523(a)(8)(A)(ii) that focuses on "funds received as an educational benefit, scholarship, or stipend" not only gives meaning to the other subsections

---

[14] As the Supreme Court has acknowledged, some redundancy in a statute is inevitable. *Husky Int'l Electrs. v. Ritz*, 136 S.Ct. 1581, 1588-1589 (2016); *Marx v. Gen'l Revenue Corp*., 568 U.S. 371, 386 (2013). The Supreme Court has, however, also explained that "the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx*, 568 U.S. at 386 (citations omitted). That is exactly the situation in this case.

of the statute, but it also comports with the well-established principle of construing exceptions to discharge narrowly. As the Fourth Circuit has explained, "[w]hen considering the applicability of an exception to discharge, we construe the exception narrowly 'to protect the purpose of providing debtors a fresh start.'" *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 219 (4th Cir. 2007) (quoting *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999)). *See also Bullock v. BankChampaign*, 569 U.S. 267, 275 (2013) (noting that "'exceptions to discharge "should be confined to those plainly expressed"'") (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998)).

Based on the foregoing analysis, the Court finds the phrase "received as an educational benefit, scholarship, or stipend" in section 523(a)(8)(A)(ii) unambiguous and inapplicable to the facts of this adversary proceeding. The language of that subsection covers funds received by a debtor as an educational benefit,[15] a scholarship, or a stipend. The Defendant does not argue that the Loan qualifies as an actual educational benefit, scholarship, or stipend.[16] The facts do not suggest that the Loan was an actual educational benefit, scholarship, or stipend.[17] Rather, the Defendant asserts, and the record supports, only that the Loan was used by the Debtor for

---

[15] The Code does not define the term "educational benefit." As noted above, some courts have used a purpose test, finding that a loan extended for educational purposes constitutes an educational benefit or an educational loan (some courts invoking the purpose test have done so only in the context of interpreting the term "educational loan"). *See, e.g.*, *Sokolik v. Milwaukee Sch. of Eng'g (In re Sokolik)*, 635 F.3d 261, 266–267 (7th Cir. 2011) (discussing "educational loan" as used in section 523(a)(8)(A)(i)). Other courts have associated the term "educational benefit" with programs that pay students for tuition related costs. *See, e.g.*, *Cazenovia Coll. v. Renshaw (In re Renshaw)*, 229 B.R. 552 (B.A.P. 2d Cir. 1999), *aff'd*, 222 F.3d 82 (2d Cir. 2000) (discussing term "educational benefit overpayment"). *See also*, *Campbell*, 547 B.R. at 56 (citing legislative history of the 1990 amendments to section 523(a)(8) that reference "VA benefits" as an example of educational benefits included in the statute). Thus, under this latter approach, grants, tuition reimbursement programs, or other benefits that contain purposes and terms similar to scholarships and stipends might qualify as an "educational benefit" under section 523(a)(8)(A)(ii). That issue is not, however, before the Court. Rather, the Court concludes only that, based on the language of section 523(a)(8) as a whole, the Loan is not an educational benefit covered by section 523(a)(8)(A)(ii).

[16] In its Memorandum in Support of its Motion for Summary Judgment, the Defendant stated that "the Loan is excepted from discharge by § 523(a)(8)(A)(ii) as it consisted of an obligation to repay funds received that in turn provided an educational benefit to the Plaintiff." Def.'s Mem. in Supp. 4, ECF 43. The Defendant further asserted that "[s]imply, Plaintiff received funds to obtain an educational benefit. Under the plain meaning of Section 523(a)(8)(A)(ii), Plaintiff's loans are not dischargeable." Def.'s Mem. in Supp. 8, ECF 43.

[17] As explained above, the Debtor admitted only that she used the Loan *for* an educational benefit. *See supra* note 9.

educational purposes. That is not enough to bring the Loan within the subsection. In addition, the Court is not persuaded by the Defendant's argument that an "obligation to repay funds" is equivalent to a loan, or that its proposed, expansive reading of subsection (A)(ii) leaves a meaningful role for the remainder of section 523(a)(8). As such, the Court concludes that, as a matter of law, the Defendant's debt is not protected by section 523(a)(8)(A)(ii).

### C.      Policy Considerations

Although the Court finds no ambiguity in the relevant language of section 523(a)(8)(A)(ii), the Court will briefly address the parties' legislative history and policy arguments. An interpretation of section 523(a)(8)(A)(ii) that includes only "funds received as an educational benefit, scholarship, or stipend" comports with Congress's reported objective "to protect the student loan system and maintain the ability of future students to obtain funding to advance their education."[18] *Kidd v. Student Loan Xpress, Inc. (In re Kidd)*, 458 B.R. 612, 621 (Bankr. N.D. Ga. 2011). By separating the language in subsection (A)(ii) from the government-related loans and programs identified in subsection (A)(i), Congress confirmed that subsection (A)(ii) is a separate category. In addition, Congress added subsection (B), which pulled in private loans that constitute "qualified education loans" under section 221(d)(1) of the Internal Revenue Code of 1986. This category of private loans was not previously covered by the language of section 523(a)(8), and the linkage to section 221(d)(1) of the Internal Revenue Code ensured that the credit extended was for purposes of attending an institution that is eligible to offer programs under Title IV of the Higher Education Act of 1965. This amendment provided somewhat parallel treatment for both public and private educational loans. Notably, the addition

---

[18] As noted above, the legislative history to BAPCPA does not specifically speak to the policies underlying the amendments to section 523(a)(8).

of subsection (B) is the only amendment to section 523(a)(8) mentioned in the legislative history to BAPCPA. *Nunez*, 527 B.R. at 413.

The foregoing interpretation of section 523(a)(8) is consistent with the legislative history of both the original enactment of section 523(a)(8) and BAPCPA generally. It does not provide lenders with blanket protection for any loan used at least in part by a debtor for educational purposes. Rather, the language of the statute suggests that Congress worked to strike a delicate balance between the fresh start policy for debtors and the protection of certain educational programs and lenders offering loans for such programs. It is not for this Court to say whether Congress has struck an appropriate balance. Moreover, if any policy change needs to be made, that is a matter for Congress, and not one for this Court.

###### V.      Conclusion

For the reasons set forth above, the Court concludes that the Loan is not an educational benefit under section 523(a)(8)(A)(ii) and, therefore, is dischargeable in the Debtor's chapter 7 case. The Court will enter an Order granting the Debtor's (Plaintiff's) Motion for Summary Judgment and denying the Defendant's Motion for Summary Judgment.

Copies to:      Yolande E. Essangui
                418 C Woodlake Court
                Glen Burnie, MD 21061

                Ronald J. Drescher
                Drescher & Associates
                4 Reservoir Circle
                Suite 107
                Baltimore, MD 21208

                Michael Klima

8028 Ritchie Highway
Suite 300
Pasadena, MD 21122

Charles R. Goldstein
Protiviti Inc.
1 East Pratt Street
Suite 800
Baltimore, MD 21202

**END OF MEMORANDUM OPINION**